THE SOUTH ST. LOUIS RAILWAY COMPANY, *Plaintiff in Error*, v. PLATE *et al.*

1.  **Sale, Suit to Set Aside:** EQUITY. The case examined and the trustee's sale of the property of the plaintiff upheld, under the contract between the parties.

2.  **Practice:** EVIDENCE: CONDUCT OF PARTIES TO CONTRACT. A plaintiff who introduces oral testimony of the conduct of the parties to a contract, for the purpose of showing the interpretation put upon it by them, cannot object that the defendant was permitted to more fully show such conduct.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*George M. Stewart* and *S. Hermann* for appellant.

( 1 ) When a contract admits of two different constructions, it is a rule of law that the construction which is consistent with duty, honesty, and fair dealing, shall be adopted in preference to one which involves fraud and wrong-doing. *Johnson County v. Wood*, 84 Mo. 489 ; 2 Whar. on Cont., sec. 654 ; *Lorillard v. Clyde*, 86 N. Y. 384. (2) A patent ambiguity in a contract may be explained by the subsequent conduct of the parties, with respect to the ambiguous terms ; where the ambiguity is not of this character, it must be solved by a construction of the instrument with such aid as is furnished by a study of the circumstances under which it was entered into. *Gas Light Co. v. St. Louis*, 46 Mo. 127 ; *Bailey v. Railroad*, 17 Wall. 105 ; *Johnson County v. Wood, supra* ; 2 Whar. on Cont., sec. 659 ; 2 Whar. on Evid., secs. 939, 943. (3) Provisions of law, applicable to contracts, form part of the terms and conditions embodied in the contract by the parties thereto ; and these provisions of the law, though only implied, can no more be varied by parol, than the express terms of the instrument. *Lang v. Strauss*, 7 N. E. Rep. 763, and cas. cit. ; *Lewis v. Insurance Co.*, 61 Mo. 534, 538. (4) Where creditors of a railway company assist their debtor in appropriating all its revenues in betterments of the road, they will not be permitted to sell the corporate property for non-payment of interest on their bonds. *Williamson v. Railroad*, 1 Bissell, 198 ; *Billingsley v. Harrold*, 11 Ala. 775. (5) The records of the proceedings of a public body, or of directors of a corporation, is not the only means by which their acts can be proved, unless the law expressly and imperatively requires all matters to appear of record. *Bridgeford v. Tuscumbia*, 16 Fed. Rep. 913 ; 1 Dillon Mun. Corp., sec. 237 ; *Bank v. Dandridge*, 12 Wheat. 64 ; *Bigelow v. Amboy*, 1 Dutch. 297 ; *San*

*Antonio v. Lewis,* 9 Tex. 69; *Trustees v. Cagger,* 6 Barb. 576.

*Louis Gottschalk* for respondent.

The terms of the mortgage were never superseded by a new agreement. The stock of the company was never fully paid up. The resolution of the first board of directors was that it should be considered so. Unfortunately, the law does not recognize such resolutions as hard cash, or as payment. We point to the remarkable record of the plaintiff itself, for the assertion that not more than five and one-half per cent. were ever paid. What a payment of stock is, has too often been decided to need the citation of authorities. *Chouteau v. Dean,* 7 Mo. App. 210. The construction which the parties placed on their contracts will be followed by the courts. *Gas Light Co. v. St. Louis,* 46 Mo. 121.

BRACE, J.—After a careful consideration of the views urged by counsel for plaintiff in error, in this cause, for a reversal of the judgment of the court of appeals, affirming the judgment of the circuit court of the city of St. Louis, dismissing plaintiff's bill, we have reached the same conclusion arrived at by those courts; the judgment of the court of appeals is, therefore, affirmed, and the opinion of said court herein ordered reported; to which we deem it only necessary to add, by way of suggestion, that an analysis of the contract, styled in the opinion a "tripartite agreement," having regard to substance, and not mere form of expression, will disclose the fact that the bondholders, by that agreement, not only did not agree with plaintiff to extend the time for payment of interest on the bonded indebtedness secured by the deed of trust, but did not enter into any covenant with plaintiff, in regard to that or any other subject; in fact, these parties did not contract *with* each other at all. Together, they contracted

with Theodore Plate; there are covenants in the contract between him and the plaintiff; there are covenants between Plate and the bondholders, but there are none between plaintiff and the bondholders. In this contract the plaintiff and the bondholders are parties of the one part, and Plate is the party of the other part; if they had been so designated in the instrument, their real contractual relations would have been more apparent; whatever promises of the bondholders the instrument contains are promises to Plate; whatever consideration they received, if any, they received from Plate; whatever obligations they incurred, whether express or implied, were obligations to Plate. They promised plaintiff nothing, they received nothing from it, their action in the premises deprived it of nothing, but conferred a benefit on both plaintiff and Plate.

When the contract was executed, it left the relations previously existing between plaintiff and the bondholders in exactly the same condition as before; their rights and obligations *inter sese* unchanged; so the parties understood their contract with Plate, from the time it was entered into until after the sale under the deed of trust; so we regard it. There was nothing in the contract from which a promise by the bondholders, to extend the time of payment of interest, in favor of plaintiff, could be implied; the relation of obligor and obligee did not exist between them. The execution of the contract deprived plaintiff of no resources applicable to the payment of that interest, or in any manner rendered them less able to meet their obligations. All plaintiff's income before, as after, the execution of the contract, was absorbed by current running expenses, and its application to the payment of interest maturing was no more impracticable after, than it was before, the execution of the contract; the only effect the contract could have had upon its affairs, was to enhance its credit, and thereby the better enable it to raise money

to meet its obligations, and no promise of extension on the part of the bondholders ought to be implied from the nature of the transaction.    All concur.

### OPINION OF THE ST. LOUIS COURT OF APPEALS.

THOMPSON, J.—This is a suit in equity, the general object of which is to set aside a trustee's sale of the property of the South St. Louis Railway Company. The facts appear to be that the street railroad in controversy had formerly been owned by a corporation called the Carondelet Railroad Company ; that this corporation had given a mortgage of the property to secure certain bonds, of the amount of $185,000 ; that default having been made in the payment of the interest and principal of these bonds, the road was sold under the mortgage ; that Ira C. Terry, Esq., as the representative of the bondholders, was the purchaser at the sale ; that, subsequently, the corporation was formed to which Mr. Terry conveyed the property so purchased by him, known as the South St. Louis Railway Company, this plaintiff ; that, in consideration of such conveyance, the South St. Louis Railway Company issued to the holders of the $185,000 of bonds paid-up stock of the South St. Louis Railway Company of the nominal value of $185,000, and also paid $10,175 in cash.    In pursuance of this scheme, it was resolved at a directors' meeting of the plaintiff corporation, that an assessment of five and one-half per cent. be made on all stock, and that said assessment, together with the bonds of the Carondelet Railway Company, be a full and final payment of the stock of the company ; that such assessment be paid over to Ira C. Terry at once, according to the agreement made with him, together with the bonds paid in by the stockholders on his subscription.    Under this scheme, the plaintiff corporation issued $200,000 of capital stock, and called it paid-up stock, the payment for the same

being made in the way already stated. This was in April, 1876.

In October, 1876, the plaintiff corporation gave a mortgage deed of trust to the defendant, William C. Lange, as trustee, of its franchises and all its property then existing, or thereafter to be acquired, to secure payment of one hundred and sixty bonds, of five hundred dollars each, payable in ten years, with interest payable semi-annually upon coupons attached, at the rate of eight per cent. per annum. This mortgage does not seem to differ in its principal features from the railway mortgage deeds of trust which have become common in the United States. It allowed the trustee to sell upon default of payment of any installment of interest as well as upon default of payment of the principal. It empowered the trustee to petition any competent tribunal for the appointment of a receiver, in certain contingencies, and contained certain provisions for the disposition of the moneys raised by the negotiation of the bonds, which need not be stated.

The moneys thus raised did not help the plaintiff corporation out of its difficulties. Its operating expenses exceeded its income. It made two or three payments of interest, under this mortgage, by moneys raised by selling some of the mortgage bonds, which had hitherto remained unsold. On the first of December, 1881, it was in arrears in payment of the interest to the amount of $12,800, and it had also a miscellaneous indebtedness amounting to nearly twelve thousand dollars, in the shape of wages due to laborers, feed-bills, taxes, etc. It is said, in the plaintiff's statement, that this floating indebtedness either was, or by suitable proceedings could have been, converted into liens upon the company's property which would have a priority over the bonds. This may be true as to the taxes, but no law has been pointed out to us, under which the general indebtedness of a street railway company in Missouri can take

precedence of a.previously-existing recorded mortgage of the company's property.

Such being the state of the affairs of the plaintiff corporation, on the fifth of December, 1881, an agreement was entered into between the plaintiff, as the party of the first part, Mr. Lange, as trustee and agent of the mortgage bondholders, of the second part, and Theodore Plate, of the third part, in the following language:

"The said South St. Louis Railway Company has executed and delivered its first-mortgage bonds to the said W. C. Lange, trustee and agent as aforesaid, to the aggregate amount of eighty thousand dollars, with an amount of funded and accrued interest now due thereon, said mortgage being upon the road, roadbed, cars, horses, mules, harness, stable and all real estate, including each and every portion of the property of the said railway company, along with the franchise and right of way; and whereas, the said South St. Louis Railway Company has become and is indebted to divers and sundry persons in various sums, which said amounts are herein characterized and designated as floating indebtedness; whereas, the said railway company is in need of additional stock and equipments to run and operate the same; and whereas, the said Theodore Plate is willing to advance and lend to said railway company such sums of money as may be necessary or required to fully equip and operate said railway, and to discharge and liquidate such portions of the floating indebtedness, heretofore mentioned, as the parties hereto may mutually agree upon, providing said money can be properly and satisfactorily secured to him; and, whereas, the said railway company and said William C. Lange, trustee and agent as aforesaid, are willing and desirous that said sums so to be advanced by said Plate, or hereafter to be advanced by him in the management and operating of said railway, as hereinafter set forth, shall be a first lien and obligation upon said railway and all its property, real,

personal and mixed, including and meaning the franchise: Now, therefore, it is agreed by and between said parties hereto as follows:

"1. That said railway company, acting by its president and secretary, and under resolution of its board of directors thereof, of date, agree with said Plate to give and vest in him irrevocably, the absolute control and management of said railway and all its property, for a period of three (3) years, from and after the date of this agreement, and to pay and compensate him for his said services, at the rate of three thousand dollars per annum, said Plate to be vested with absolute control and management of said road as aforesaid, including the right to dispose of and exchange the personal property thereof, at any time during said period when, in his judgment, the best interests of the parties thereto will be subserved thereby, without hindrance or interference of the stockholders of said railway whatsoever, or the said William C. Lange, trustee and agent as aforesaid: said Plate being invested with the power under this agreement to employ and discharge any and all employes and operatives of the said railway at any and all times during the said three years.

"2. The said William C. Lange, trustee and agent of said first mortgage bondholders, agrees to and with said railway company and said Plate, that any and all sums of money so advanced by said Plate, as aforesaid, during said term of three years, shall be, and is, the first prior lien upon all the property of the said railway company, including and especially meaning the property described in deed of trust, securing the payment of the said first-mortgage bonds, and which said deed is duly recorded in book 599, page 310, of the records of the city of St. Louis, and all such and other additional property as may be acquired by said railway company during said term of three years.

"3. The said Plate, in consideration of the stipu-

lations, conditions and privileges above set forth, and of one dollar to me in hand paid, the receipt of which is hereby acknowledged, agrees to and with said railroad company, and said William C. Lange, trustee and agent as aforesaid, and solely upon the condition, understanding and agreement, that the sum so to be advanced by said Plate, as hereinafter mentioned, shall be and is a first and prior lien upon all and every part and portion of the property of the said railroad company ; including all that portion thereof expressed and described in the deed of trust above mentioned, [and all that may be acquired during the said term of three years ; to lend and advance to said railway company, the sum or sums of money necessary, not to exceed, however, the sum of fifty thousand dollars ; said money to be used by said Plate in the running and operating of said road, including a full and complete equipment thereof, and the discharge and liquidation of such portions of the floating indebtedness as may be mutually agreed upon by the parties hereto, for which said advances, so to be made by said Plate, the parties hereto agree that said railway company is to pay interest thereon at the rate of eight per cent. per annum, said interest to be computed semiannually ; and a final settlement to be made between the said parties at the end of three years from the date thereof ; and the said Plate agrees with the parties hereto, that he will advance the various sums referred to, and which may be required from time to time to carry out the conditions of this agreement, and will, in the consideration of the sum of eight thousand dollars, annually, agreed to be paid to him by said railway company, real, personal and mixed, and to give and devote his entire time and attention, in and about the control and management thereof, for and during the period of three years ; that said Plate will render to said railway company, and to said Lange, quarterly statements, showing receipts and disbursements of said railway

company, advances made by him for and on its account, and the general condition of said railway and all its property ; and the said Plate agrees further, that at any time he has net earnings on hand belonging to said railway company to the amount of five thousand dollars he will apply the same to the payment and discharge of the advances so to be made by him, providing always that said money shall not be required to discharge and liquidate the running expenses of said railway.

"5. The said railway company agrees to and with said Plate, to accept and receive said money so to be advanced, upon the conditions above set forth, and agrees and binds itself to pay interest thereon at the rate of eight per cent. per annum, until such time as the same may be refunded to said Plate, and all the conditions and requirements of this agreement are complied with. The said William C. Lange, trustee and agent as aforesaid, agrees with said railway company and said Plate, that the advances so to be made by said Plate to said railway company, for and during said period of three years, and for the purposes aforesaid, shall be, and are, a first and prior lien upon all the property of said railway company, including, specially, all that portion thereof covered by the mortgage securing said bonds.

"Said Plate agrees to and with said railway company and said W. C. Lange, to pay off and discharge all general and special taxes now due or owing, or that may hereafter become due or owing by said railway company, for and during said period of three years."

Under this tripartite contract, the defendant, Plate, took possession and assumed the management of the plaintiff's road and property, and advanced the full sum of fifty thousand dollars, as therein stipulated. It seems that he made very substantial improvements in the roadbed and rolling stock, and that the daily average earnings of the company began to exhibit a substantial increase. The company continued, however, unable to

make any payment of the interest, though it seems to have made efforts to do so, in almost every way, except by assessing its own stockholders. On the twenty-sixth of January, 1882, less than two months after the making of this tripartite contract, it passed a resolution to issue twenty-five thousand dollars of second-mortgage bonds, having four months to run. The interest, represented by past-due coupons of the company, had been funded prior to the making of the tripartite agreement; that is to say, the company had executed, and the bondholders had accepted, two notes, of the aggregate amount of $12,800, one maturing in two, and the other in three years, with interest payable semi-annually. The first installment of interest maturing on these notes had fallen due, and had been paid prior to the making of the tripartite agreement, so that, in point of fact, when that agreement was made, and the company's property turned over to Mr. Plate, under it, no interest, under the mortgage, was due and payable. The fifty thousand dollars' which Mr. Plate advanced, under the contract, proved insufficient for the purposes contemplated, and, in the summer of 1882, the bondholders had advanced fifteen thousand dollars more. The first interest under the mortgage deed of trust, which fell due after the making of the tripartite agreement, matured on the first of March, 1882. This was interest on the funded over-due coupons, or, more properly speaking, interest on the two notes already spoken of. This interest not having been paid, Mr. Lange demanded payment in the following letter:

"Theo. Plate,

"President South St. Louis Railway Company:

"SIR:—Please take notice that the holders of the first-mortgage bonds, issued by your company, have notified me that the interest due on the first instant, on the funded over-due coupons of said bonds, have not been paid, and unless the coupons due April 1 next,

be promptly paid, they would call on me with the request to foreclose said mortgage, in accordance with the terms. I desire to inform you of these proceedings with a view of avoiding a foreclosure, if possible."

The coupons maturing on April 1, fell due, were not paid, and Mr. Lange thereafter addressed the plaintiff another letter, as follows:

"St. Louis, Mo., April 10, 1882.

"J. A. Robertson, Esq.,

"Vice-President South St. Louis Ry. Co:

"Dear Sir:—I desire to inform you that I have positive orders from holders of first-mortgage bonds, issued by your company, to advertise, on the twenty-fourth instant, the sale of the property conveyed to me in trust, and to sell the same, for the purposes stated in the mortgage.

"I hope your company will be able to make such arrangements, before the twenty-fourth instant, as will relieve me of the performance of an unpleasant duty.

"Very respectfully,

"Wm. C. Lange."

After the writing of this letter, Mr. Lange received notice that a board meeting of the plaintiff had been held, and that they desired him to give them further time. Two days later, Mr. Plate addressed the following letter to Mr. Robertson:

"South St. Louis, April 12, 1882.

"J. A. Robertson, Esq.,

"Vice-President South St. Louis Ry. Co.

"Dear Sir: It becomes my duty to hereby give notice to you as acting president, and through you to the board of directors, that the cash means yet in my hands as manager of the road, under the tripartite agreement, after I made the maximum advance of fifty thousand dollars, will not be sufficient for the next pay roll, be-

coming due on the fifteenth inst., and that I shall not have the money to satisfy claims for my stable, track reconstruction, etc., still outstanding. If the board of directors shall not provide for the necessary funds to meet the engagements above mentioned, and still to be made, regularly, by to-morrow, Thursday, April 13, 1882, I consider myself duly bound to advise Mr. Wm. C. Lange, as trustee of bondholders, of the circumstances, so that he may take the necessary steps to protect the property conveyed to him in trust.

" Respectfully,

"THEO. PLATE."

On the following day, April 13, a special meeting of the plaintiff's board of directors was held, at which the following was passed :

" Resolved, that in pursuance of, and in conformity with, a resolution adopted on January 26, 1882, at a meeting of stockholders of the South St. Louis Railway Company, the president and treasurer be, and are hereby authorized to issue $25,000 of second-mortgage bonds, secured by all the property, franchises, etc., of the South St. Louis Railway Company, said bonds to run four months, bear eight per cent. interest, and to be sold at not less than eighty (80) cents on the dollar. Each stockholder to be offered the privilege of purchasing as many of the bonds as he or she may desire."

A week later, on April 20, at another special meeting of the plaintiff's directors, the following resolution was unanimously adopted :

" Whereas, the earnings of the road at present, and in the near future are, and will not be sufficient to pay all the expenses, including rent, livery, taxes, interest, etc. ; and,

" Whereas, a foreclosure, under the first mortgage, will be advertised in a few days, if no arrangements with the bondholders are made immediately, it is hereby resolved by the board of directors that a finance com-

mittee of three be nominated by the president, for the following purposes:

"1. To settle the following claims, by having issued to the respective parties of the unissued stock of the company the corresponding amount at par in full payment of such claims, namely: Improvement and Equipment Company, Messrs. Sauer, Gottschalk, Mott, Lange, Wieting.

"2. To request and induce the bondholders, through trustee, Mr. Wm. C. Lange, to abstain from a foreclosure up to September 1, 1882, in order to give the stockholders time and chance to re-bond the road at a lower rate of interest.

"3. In consideration of this leniency on the part of the bondholders, to agree and bind this board to the obligation not to interfere in any way with a foreclosure of mortgage on or after September 1, 1882, if cause then still exists, and to recognize all sums of money considered necessary by the manager for equipment and running of the road, and advanced by or through said manager over and above the fifty thousand dollars provided for in the tripartite agreement, with interest at the rate of eight per cent. per annum, as a third lien on the proceeds of an eventual sale under mortgage, giving those additional advances the same rights and privileges as the fifty thousand dollar advances have under said said agreement, if the same are not repaid before by the proceeds of a new loan or otherwise.

"4. To procure the consent of the stockholders of this company to the above agreement by signature, or by a legal majority vote at a stockholders' meeting, to be called for that purpose, the following gentlemen were appointed by the president to constitute the finance committee: Messrs. Robertson, Herman and Greenfelder."

On the twenty-fifth of April, 18 82, a meeting of the plaintiff's stockholders was held, at which thirteen hundred and twenty-eight shares were represented, at which

the first and second sections of the foregoing resolution of the directors were adopted.

As to the third section, "Mr. Ira C. Terry moved, as an addition, to the effect that the bondholders and Theo. Plate should abandon any recourse against the stockholders for the recovery of any differences between the amount realized by a sale of the road and the respondents due them, which motion, after being fully discussed, was 'lost; whereupon, the third section was adopted by an unanimous vote of all the stockholders present."

On the twentieth of July, Mr. Lange had an interview with Mr. Robertson, vice-president of the plaintiff, in which Mr. Robertson stated that he was then intending to go to New York to make arrangements for the re-bonding of the road, for the purpose of paying off the mortgage debt, and raising the means necessary to run the road.

He solicited from Mr. Lange a letter, touching the prospects of the road, and Mr. Lange accordingly wrote as follows :

"July 22d, 1882.

"J. A. Robertson, Esq.

"Dear Sir :—You wish to have my opinion concerning the re-bonding of the South St. Louis Railroad. All I can say is that, with about $200,000, you can take up the existing mortgage, pay the amount as loaned by the manager, and acquire such property as is needed for the operation of the road. I refer to the lots on the corner of Sidney and Lynch streets, which are indispensable, and which will pay better to own than to rent, and to purchase still more cars and live stock, as the increase in traffic may require. You may say that the road has been in operation through its extension since fourteen months, but as it will now be admitted by all, that operation, or rather that management, was a failure, and we may justly date the operation from about April 1

last, and if you will examine the fare receipts since that date, and notice the steady increase, reaching now to the point where they pay running expenses, even at the extraordinary high price of horse feed still ruling, you will come to the conclusion that, from this date on, the road will not only pay running expenses; that the expected falling off of traffic during the winter season will not affect this new road, competing with two older ones, as much as it does every old established line, and that, under a prudent and careful management, it will not only pay a fair rate of interest, on a capital of about $200,000, but that there is a good prospect of an increase of interest, or dividend, in the not very distant future. Trusting that you will succeed in your efforts, I remain,

"Truly yours,

"Wm. C. Lange."

Mr. Robertson went to New York, but was not successful in his mission. He also sent Mr. Cohen, a broker, to New York, on the same errand. According to Mr. Lange's testimony, he delayed selling the road in order to give the plaintiffs time to float the new mortgage, if they could, as the bondholders did not wish to force a sacrifice of the interests of the plaintiff's stockholders. He, Mr. Lange, also promised Mr. Robertson that, in order to facilitate the making of the new loan, the bondholders whom he represented would take a part of the bonds. Among the schemes suggested on the part of the stockholders of the plaintiff, for extricating it from its difficulties, was the making of a second mortgage, with the idea that the bonds would be taken and the money advanced by the plaintiff's stockholders.

Then, it seems that the idea was broached of assessing the stockholders; but, as Mr. Lange forcibly expressed it in his testimony: "This matter of assessing the stockholders was talked over, and was found to be impracticable, because they would not pay. They all wanted their property saved at the expense of the others."

The bondholders continued to indulge the plaintiff, when, on the first of September, Mr. Lange received the following letter, signed by gentlemen interested in the plaintiff corporation, in exactly what way does not appear, except that Mr. Robertson was its vice-president:

"St. Louis, September 1, 1882.

"Mr. William C. Lange,

"Trustee of the South St. Louis Railway Company "Bondholders,

"International Bank, City.

"Dear Sir:—We want to request you to extend to us a few more days' time, within which to arrange for the payment or adjustment of the bonded and other indebtedness of the South St. Louis Railway. We feel that we have but little ground upon which to base such a request, but we are now doing all in our power to effect some kind of adjustment, and the next few days will enable us to decide whether we can do anything or not.

"Respectfully yours,

"J. A. ROBERTSON,
"HENRY W. HOUGH,
"JAS. A. BARNEW,
            "Per Kennedy.
"JAS. C. KENNEDY,
"F. W. MOTT."

On September 13, a meeting of the stockholders of the plaintiff took place, at which 1,015 shares were represented. The following proceedings appear of record upon the plaintiff's book of minutes:

"The minutes of the stockholders' meetings of April 25 and 29, 1882, were read and approved."

"Mr. Robertson, on whose motion the board of directors had called this meeting, stated, as the object of the same, to consult together, whether anything would be done to obviate the foreclosure of the road under

mortgage, which had been advertised by the trustee of the bondholders for October 7, 1882."

"Theo. Plate referred to the proceedings of the meeting of April 25, just read, in which stockholders, representing 1,328 shares, had agreed and bound themselves not to interfere in any way with a foreclosure, if bondholders would delay the same to September 1, 1882. This respective agreement the bondholders had faithfully kept, although stockholders and directors were not able to carry out their part of the agreement entirely, viz: To induce Messrs. Wieting, Sauer, and Mott, to accept of the unissued stock of. the company in payment of their respondents' claims, Mr. Wieting having sued and recovered judgment, and Mr. Sauer having accepted a certificate of indebtedness."

"Theo. Plate, as manager and treasurer, then laid before the meeting his third quarterly statement and balance sheet, which was at length explained and discussed."

"Mr. J. B. Greenfelder then moved that a committee of two stockholders, being lawyers by profession, be appointed to examine into the legal rights of the stockholders, under the tripartite contract, which motion, being seconded by Mr. Mott, was unanimously carried.

"The chair appointed Judge Dryden and Mr. A. Arnstein as such committee, and, on motion, the meeting then adjourned.

"M. A. WOLFF, Chairman.

"ALBERT ARNSTEIN, Secretary."

Mr. Lange had already advertised the plaintiff's property for sale under the deed of trust. The sale took place on the seventh of October, 1882. The property was bought in for the bondholders at the sum of one hundred thousand dollars, being about one thousand less than the aggregate indebtedness due from the plaintiff to them. During the period of about eleven months, which elapsed between the making of the tri-

partite agreement and this sale, Mr. Lange testifies that no claim was ever made by the president or any of the directors of the company; that the payment of the interest of the first mortgage had been extended for three years, by virtue of this agreement. On the ninth of October, 1882, two days after the sale took place, Mr. Lange received, from Messrs. Hermann and Reyburn and George M. Stewart, attorneys for plaintiff, the following letter:

"To William C. Lange,

"Trustee and Agent of the Bondholders of the South St. Louis Railway Company:

"On behalf of our client, the South St. Louis Railway Company, we call your attention to sections 3298 and 3299, of the Revised Statutes of Missouri. I notify you that said company will take proper steps to avail itself of the benefits of said statute, by giving the bond therein provided for. The company will insist upon its rights to retain possession of the property, in accordance with the terms of the tripartite agreement of December 5, 1881, and the provisions of said statute.

"HERMANN & REYBURN and

"GEO. M. STEWART,

"Attorneys for South St. Louis Railway Co.

"St. Louis, October 9, 1882."

I. Upon the foregoing facts, what is the ground upon which the plaintiff now sets up the contention that Mr. Lange had no right to advertise and sell the property under the mortgage deed of trust? It is, that the tripartite agreement, by necessary implication, involved an agreement that the plaintiff should not be required to pay interest during the three years in which the tripartite agreement was to be in force. There are two conclusive answers to this contention:

(1) The agreement does not say so. If it had been the understanding of the plaintiff that, in addition to waiving their first lien upon the road and property, giv-

ing Mr. Plate a first lien and remitting themselves to a second lien, the bondholders were to forego for three years more the payment of their interest, is it to be supposed that those acting for the plaintiff would not have taken the precaution to insert such a provision in the instrument?

(2) But the whole conduct of the officers, directors, and stockholders of the plaintiff, from the time of making the tripartite agreement to the sale of the road, on the seventh of October of the following year, shows that there was no such understanding; no such claim was ever set up or suggested. They apparently made every possible effort to raise money to pay the interest, except the effort which they might have made by advancing it themselves.

They solicited postponements, and, at the stockholders' meeting of the twenty-fifth of April, placed upon their minutes a proposal that, if the bondholders would further indulge them until the first of September, they would not thereafter oppose a sale of the property. On the thirteenth day of September, after the indulgence, which they had thus secured, had terminated, without any successful result, and after the sale of the property had been advertised, they proceeded to violate this agreement by appointing two lawyers of their number to see if some steps could not be taken to prevent the sale. Even when, two days after the sale, one of the able counsel employed by them wrote the letter to Mr. Lange, asserting their right to redeem, under sections 3298-99, of the Revised Statutes, and claiming that they had the right, in case of such redemption, to retain possession of the property under the tripartite agreement, and under the above statutes, the pretension was not set up that the sale was void, because the mortgage debt had not become due. It thus conclusively appears that, instead of this being the understanding of the parties at the time when they made the tripartite

contract, or at any time prior to the trustee's sale, it was a mere lawyer's afterthought, and that is all there is in this case.

II. Objection was made by the plaintiff to some of the testimony offered by the defendant, touching the efforts of the plaintiff to raise money to pay the interest which accrued subsequently to the making of the tripartite agreement, and the negotiation between the plaintiff and Mr. Lange, as agent of the bondholders, touching this matter. The general purpose for which this evidence was introduced appears to have been to show that there was no understanding on the part of the plaintiff, its officers, and directors, that payment of interest was to be foreborne during the three years in which the tripartite agreement was to run. The contention now is, that this evidence was inadmissible, because the written contract must speak for itself, and is not to be interpreted by parol evidence. This contention puts the plaintiff in the position of setting up a claim that the contract should be interpreted as a relinquishment of a highly important right on the part of one of the parties to it, when it does not say so in terms ; of introducing the history of the events which led to the making of it to show that it ought to be so interpreted, and then of objecting to matters of subsequent history, all of which show that the parties never intended that it should be so interpreted. Certainly there is no such necessary implication to be derived from the terms of the contract. The whole struggle of the plaintiff has been to have the court interpret this contract, not with reference to its language, but with reference to surrounding circumstances, so as to make it mean something which it does not express on its face. With this end in view, they have gone into the full history of the circumstances which led to it. What is this but offering parol evidence in explanation of the contract? It was a necessary part of the plaintiff's own case that the contract be

so interpreted. This being so, upon what ground can we say that the court erred in extending the historical inquiry to a date subsequent to the making of it, so as to show that this interpretation had never been put upon it by the plaintiff itself, until the trustee's sale had taken place?

But if this objection had been originally well taken, the right to insist upon it has been waived by the plaintiff in its subsequent course at the trial, for many of the matters in the foregoing statement of facts, and especially the numerous entries above quoted from the plaintiff's minute book, subsequent to the making of the tripartite agreement, were put in evidence by the plaintiff itself.

The judgment of the circuit court must be affirmed. All the judges concur.