CONSOLIDATED COAL COMPANY, Respondent, v. MEXICO FIRE BRICK COMPANY, Appellant.

### St. Louis Court of Appeals, April 21, 1896.

1. **Evidence:** ORAL EVIDENCE IN VARIANCE OF EXPLANATION OF WRITING. A contract in writing, dated November 12, 1892, bound one of the parties to sell and deliver to the other all the coal required by the latter at certain establishments for one year beginning on November 1, 1892. *Held*, that parol evidence as to the quantity of coal to be delivered each day was competent, but that oral evidence to the effect that the contract was in fact executed on, and only became operative from, a date later than that designated (November 1, 1892) was incompetent as varying the writing.

2. **Contract:** CONSTRUCTION OF STIPULATION. This contract stipulated that the party contracting to deliver the coal should not be bound to make deliveries when prevented by general strikes, or other causes beyond his control, from handling the products of his mines. *Held*, that it was sufficient for such party to show under this provision that his mines were situated on a railroad, and that he was unable to obtain from the railway company the number of cars which he had reason to expect at the time the contract was entered into, and that this was the sole cause of his failure to execute his contract in so far as he did not do so.

3. ———: PLEADING EXCEPTION EXCUSING PERFORMANCE. In an action for the breach of a covenant in a contract which is subject to a proviso or exception, the party sued for the breach must plead the proviso or exception in order to avail himself thereof, if it is not contained in the body of the covenant itself but in a separate clause of the contract.

4. ———: DAMAGES FOR BREACH: DUTY OF INJURED PARTY TO PREVENT ACCUMULATION. An injured party is bound to reasonably exert himself to prevent the accumulation of damages. *Held*, accordingly, in an action for the nondelivery of coal under the above mentioned contract, that the plaintiff could not recover for any loss which he could have avoided by procuring coal elsewhere.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*W.. W. Fry* for appellant.

*Mills & Grant* and *J. G. Trimble* for respondent.

Biggs, J.—The plaintiff is engaged in the coal business in the city of St. Louis. Its supply of coal is obtained from its mines at Mt. Olive, in the state of Illinois. At the times hereinafter stated the defendant was engaged in burning fire brick in the city of Mexico, Missouri. The plaintiff sues to recover $150, the price of coal alleged to have been sold and delivered to the defendant in the month of May, 1893.

The defendant admitted the indebtedness, but the answer pleads a counterclaim by reason of damages growing out of an alleged breach by plaintiff of the contract for the sale of the coal. The coal was sold and delivered under the following contract, which is set forth in the answer, to wit:

"Memorandum of agreement between the Consolidated Coal Company, of St. Louis, party of the first part, and Mexico Fire Brick Company of Mexico, Missouri, party of the second part.

"The first party agrees to furnish said second party from its mines in Illinois all the coal required for their use at their works situated at Mexico and Truesdale, Missouri (quantity per month estimated at ―――― tons), for the term of one year, beginning the first day of November, A. D. 1892, and ending the thirty-first day of October, A. D. 1893, as follows: Mt. Olive lump coal will be furnished for the months of September, October, November, December, January and February, at ninety-five cents per ton f. o. b. mines; and for the months of March, April, May, June, July and August, the price of eighty cents per ton f. o. b. mines will be charged; said coal to be good merchantable quality. If unable at any time to

furnish nut coal, lump coal will be furnished at lump coal prices; *it being understood and agreed that said first party will not be required to furnish coal under this agreement during any portion of time when prevented by general strikes, or any other causes beyond its control, from handling the products of its mines.*

"Said second party agrees to receive from said first party all the coal used by them at the places and during the time above mentioned, and to pay therefor the price named above. Said payments to be made on or before the tenth day of each month for the coal delivered during the preceeding month.

"Dated this twelfth day of November, 1892.

"THE CONSOLIDATED COAL COMPANY OF ST. LOUIS, "By J. F. CLULY, Sales Agent.

"MEXICO FIRE BRICK COMPANY."

The answer contained the further averments that, at the time the contract was made, the defendant represented to the plaintiff that it was engaged in burning fire brick; that it had used several kinds of coal, but that the most satisfactory result was from the plaintiff's coal; that it was all important that the defendant should receive promptly the requisite supply of coal for the reason that, when the fires were once started, the brick in the kilns would be ruined unless a uniform heat was maintained; and that it was thereupon agreed that, until further orders, two car loads of coal per day were to be shipped to the defendant, and that the first shipment should be made on the sixth day of November, 1892. The further allegations were made that the defendant, relying on the contract, commenced immediately to burn four kilns of brick; that the plaintiff shipped two car loads of coal on the sixth day of November, one car on the day following, and that it failed to ship any more for eight or ten days, and that, by reason of the failure of the defend-

ant to receive the coal, the greater portion of the bricks in the four kilns were only partially burned. The damage was laid at $700, for which a judgment was asked.

The reply admitted the execution of the contract, but averred that it had been fully executed on plaintiff's part. Other allegations were denied. The cause was submitted to a jury, and the finding was for the plaintiff for the amount sued for and against the defendant on its counterclaim. The defendant has appealed.

In support of the counterclaim the defendant introduced evidence tending to prove the averments in its answer. As to the time when it commenced to burn the four kilns of brick the evidence is not very clear. The general manager first stated that the fires were started immediately upon his return from St. Louis, which was the sixth or seventh of November, and he also stated that the damage was done by the tenth, or at least by the twelfth, of that month. He was subsequently recalled in rebuttal and qualified his former statements, and said that he thought some of the kilns were fired later.

The plaintiff admitted that it failed during the month of November to ship the coal according to contract, as the defendant's evidence tended to prove. For the purpose of avoiding liability for the damages claimed, the circuit court permitted the plaintiff to introduce a mass of testimony tending to prove that the contract did not become operative or binding on it until the twelfth day of November, the day on which it was signed; that the original negotiations were with one of the plaintiff's clerks who had no authority to make but only to receive proposals for contracts, and that the contract in question was not agreed to by the plaintiff until the twelfth, when it was signed in duplicate by

the plaintiff's sales agent, and on the fourteenth forwarded to the defendant for its signature.

On this evidence the court at the instance of the plaintiff instructed the jury as follows: "The court instructs the jury that, although the contract read in evidence is conditioned to begin November 1, it can not relate back of the time of its execution by the defendant, and, therefore, plaintiff is not entitled under it for any damage defendant sustained prior to its execution, to wit, November 15 or 16." The defendant objected and excepted to the evidence and also to the instruction, and it still excepts.

By the terms of the contract, as written, the plaintiff's obligation to furnish coal thereunder began November 1, and it was incompetent to prove orally that it began at a later date, for that had a tendency to vary the contract. The fact that the writing was not signed until the twelfth of the month is a matter of no moment, for the writing is only evidence of what the agreement was. The contract as written is unambiguous, and is complete except as to the amount of coal which was to be shipped each day. As to that, parol evidence was admissible. The defendant's general manager testified that he informed the plaintiff's agent, with whom the negotiations were had, that the defendant would need two car loads of coal each day, and it was agreed that that amount should be shipped until further orders, and that the first shipment should be made on the sixth of November. We think that the circuit court tried and submitted this branch of the case on a misconception of the law, and its action was necessarily prejudicial to the defendant.

The plaintiff admitted its failure during the month of November to ship to defendant the amount of coal it contracted to furnish, and as an excuse the circuit court permitted it to introduce evidence tending to

provè that the Wabash Railroad Company failed and refused during that month to furnish to plaintiff cars in sufficient numbers to enable it to comply with existing contracts, and that, in the shipment of coal, it treated the defendant as fairly as it did other customers and furnished it as much coal as it was possible to do under the circumstances.

One of the objections made by the defendant to the admission of this evidence was that no such defense was set up in the reply. Treating that portion of the answer which sets forth the counterclaim as a petition, which must be done, and the reply thereto as an answer, this objection was well taken. If the proviso or exception in a contract be found in the body of the covenant, the party seeking to avoid it must note it in his pleading and aver a liability consistent with it; otherwise, he need only state enough to show, *prima facie*, a right of action under the contract, and leave the matter of exception to the other party to plead and prove by way of avoidance. A similar rule obtains in criminal cases. Where the exception is in the enacting clause of the statute, the indictment or information must negative its existence, but, if contained in a separate section of the act, it is a matter of defense. Bliss on Code Pleading, sec. 202, and authorities cited. The exception here is not in the body of the covenant, but is contained in a separate and independent clause of the contract, and, to entitle the plaintiff to show matters occurring under it, they should have been set forth in the reply.

Another objection made to the admission of this evidence is that the defense attempted to be made did not come within the terms of the exception. In this we think the defendant is wrong. The language of the contract is that the plaintiff should not be required to furnish coal "when prevented by general

strikes, or *any other cause beyond its control, from handling the products of its mines.*" The plaintiff's mines are situated on the line of the Wabash railroad; and if the railroad company during the month of November failed and refused to furnish the number of cars which the plaintiff had reason to expect it would furnish at the time the contract was entered into, and this was the sole cause of the plaintiff's failure to ship the coal, we think it ought to be excused. But, in this connection, it may not be improper to say that the evidence introduced by the plaintiff to the effect that the Wabash Railroad Company was in the habit of confiscating cars of coal which were billed to plaintiff's customers, and that it took some of the coal shipped to defendant, was incompetent.

In the plaintiff's fourth instruction the jury were told that the plaintiff was not responsible for any loss which the defendant might have avoided by procuring coal elsewhere. This instruction states a correct principle (*State v. Harrington*, 44 Mo. App. 297), and there was some evidence to authorize it. The rule rests on a moral or social duty, and requires of the injured party reasonable exertion to prevent the accumulation of damage.

There are other questions presented in the briefs, which we deem it unnecessary to notice, as they will probably not recur on another trial. For the reasons stated the judgment of the circuit court will be reversed, and the cause remanded. All the judges concur.