## Krug Coal Company, Appellant, v. C. G. Blake Company, Appellee.

### Gen. No. 24,782.

1. SALES, § 373*—*when evidence is sufficient to show performance of contract.* In an action by a coal company against a mine operator to recover for breach of a contract for the sale and delivery of coal, where the contract provides that shipments thereunder are subject to the "omissions of railway companies," and it is agreed that there was a shortage of cars and that defendant ratably proportioned the cars it received among its several customers and, on conflicting evidence, the court below found that there was a well-known custom of coal dealers of the city where the coal was delivered to apportion the cars among customers in case of such a shortage, it will be *held* on appeal that defendant did all that he was required to do under his contract when he ratably distributed his cars.

2. APPEAL AND ERROR, § 1300*—*when existence of custom is presumed established.* Where the evidence in regard to the existence of a custom of a trade is conflicting, it will be assumed, on appeal, that the trial court in deciding for defendant, found that the evidence established defendant's contention in regard thereto.

3. CARRIERS, § 78*—*when shipper is entitled to delivery of goods.* Where a shipper retains the bill of lading he is authorized, under Rev. St. ch. 121-a, sec. 20, par. 3 [Callaghan's 1916 Stat. ¶ 10021(23)], to take possession of the car as against the buyer to whom it was shipped, and where the latter is in default in payment at the time of the diversion, he cannot complain thereof.

4. SALES, § 367*—*what claim may be set off by seller.* A claim for the purchase price of cars of coal as agreed upon, being a claim for liquidated damages, can be set off in an action brought to recover damages for an alleged breach of contract.

Appeal from the Municipal Court of Chicago; the Hon. HARRY P. DOLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed April 21, 1920.

HOWARD AMES, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Gallagher, Kohlsaat & Rinaker, for appellee; E. B. Wilkinson, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

The Krug Coal Company brought suit against the C. G. Blake Company claiming damages by reason of the failure of defendant to ship coal to plaintiff in accordance with the terms of a contract between them. Defendant filed an affidavit of merits and a set-off claiming $550.46 balance due for coal sold and delivered. The cause was tried before the court without a jury. There was a finding and judgment in favor of defendant for the amount of the set-off, to reverse which plaintiff prosecutes this appeal.

The record discloses that plaintiff was engaged in selling coal in Chicago. Defendant operated a coal mine in West Virginia, with its principal place of business in Cincinnati and a branch office in Chicago. The parties entered into a written contract July 31, 1916, whereby defendant sold to plaintiff two thousand tons of New River Run of Mine coal at $1.50 per ton, f. o. b. mines, shipments to be made six cars per month from August 1, 1916, to March, 1917, both inclusive. Payments were to be made on the 15th of each month following shipments. The contract further provided that, "Shipments on this contract are subject to the normal operation of the collieries and omissions of the railway companies." At the expiration of the time covered by the contract defendant had failed to ship more than six hundred tons of the coal sold. The evidence shows that practically every month the defendant failed to ship the number of cars specified in the contract. On March 15, 1917, there was a balance due defendant of $84.30 for coal shipped during the month of February, and on March 27, 1917, defendant notified plaintiff that it had canceled the contract on account of plaintiff's failure to pay the bill due

March 15.   Thereafter defendant refused to ship any more coal under the contract.   Afterwards, on May 27 or 28, defendant sold and delivered to plaintiff two cars of coal at $5.25 per ton, making the amount of its set-off, $550.46.   Plaintiff claimed that these two cars were shipped under the contract.   A witness for plaintiff testified that on the 27th or 28th of May he talked over the telephone with the representative of defendant and the latter asked him if he wanted two cars of coal then being shipped and he replied that he did; that there was nothing said about the price. On the other hand, a representative of defendant testified that the conversation on the telephone was in substance that the witness asked plaintiff's president whether he wanted to purchase the two cars of coal at $5.25 per ton, and that the latter replied in the affirmative; that the coal was then sent to plaintiff as was also a copy of the order of sale and a bill. The evidence further shows that defendant had coal contracts with other parties in Chicago that were entered into prior to the date the contract in question was made, and that all of the contracts made by defendant for the sale of coal disposed of but 50 per cent of the capacity of defendant's mines.   It was agreed that there was a shortage of cars, and that defendant could not obtain sufficient cars to fill its contracts, and that defendant delivered coal under its contracts ratably among all of its customers including plaintiff—that plaintiff secured its proportionate share of the coal shipped.

Plaintiff contends that defendant first breached the contract when it failed during the several months to ship the quantity of coal required and, therefore, plaintiff was entitled to recover damages.   On the other hand, defendant's position is that it did not breach the contract at any time; that the failure to deliver the number of cars specified was the fault of the railway companies and that this contingency was

expressly provided for in the contract, for the defendant was excused for failure to deliver the number of cars where such failure was caused by ''omissions of the railway companies.''

It is undisputed that the failure of defendant to ship the coal as required was caused by its inability to secure sufficient cars. Plaintiff's position, however, is that the failure of defendant to secure sufficient cars does not excuse it since there were enough cars available to deliver to plaintiff its coal if there had been no prorating of the coal delivered by defendant among its customers, and that under the contract defendant was not authorized to do this. In 35 Cyc. (p. 248) it is said: ''If the sale is made subject to strikes, accidents, or causes beyond the seller's control, the seller is not liable for deficiencies on his part in shipments due to a strike or a shortage of cars or other causes beyond his control, if he treats the buyer fairly and ratably with reference to other parties with whom he was dealing, and is not required to deliver to the buyer the whole amount of his order to the exclusion of other customers.'' The author cites as authority the case of *Garfield & Proctor Coal Co. v. Pennsylvania Coal & Coke Co.*, 199 Mass. 22. In that case the contract for the sale of coal provided that part of it should be shipped in about equal monthly proportions, and further that shipments to be made were ''subject to strikes, etc.'' There was a shortage of cars and the seller shipped to the purchaser his pro rata share of all the coal produced, but not the full amount of the contract. The court held that this was a compliance with the contract and said: ''The court ruled in substance that defendant would not be liable for deficiencies on its part which were due to strikes or a shortage of cars or other causes beyond its control, if under the circumstances it had treated plaintiff fairly and ratably with reference to other customers with whom it was dealing;

that defendant was not bound under the terms of the agreement to deliver to plaintiff the whole amount of its coal to the exclusion of its other customers." To the same effect is *Jessup & Moore Paper Co. v. Piper,* 133 Fed. 108, where there was a failure on the part of the seller to deliver the quantity of coal contracted for on account of a shortage of cars. The contract provided that the seller should not be liable for a failure to perform if prevented by hindrances beyond their control. The evidence showed that the seller had distributed the cars which were furnished ratably among their customers. The court there said: "The allegation upon the part of the defendants that they did not have sufficient cars to enable them to fulfill their contracts, and therefore they did the next best thing; that is to say, they apportioned their cars among all their customers, giving to each one his due and ratable share. If the facts were as averred by the defendants, I think that would be a fair, a reasonable and proper thing to do. I do not think the defendants could be called upon to carry out one contract in full at the expense of all the other contracts for which they were equally bound, but that if there was a genuine scarcity of cars, so that it was impossible for them, for example, to carry out more than 25 per cent of their contracts, if they carried out 25 per cent of each contract I think that would be a perfectly fair and proper and lawful thing to do, under such a contract.  *  *  * If they gave the plaintiff its ratable share of cars during the period in question, then they certainly have discharged all their duty with reference to that part of the claim that they could be called upon to discharge." The same ruling was applied in *Consolidated Coal Co. v. Mexico Fire-Brick Co.,* 66 Mo. App. 296. In the instant case it is agreed that there was a shortage of cars and that defendant ratably proportioned the cars it received among its several cus-

tomers. This was all it was required to do under the terms of the contract. In addition there was testimony, pro and con, as to whether there was a well-known custom among coal dealers in Chicago, in the event of a shortage of cars, for a seller of coal to proportion such cars as he received among his customers, and although there was conflict in the testimony on this point, since the court decided for the defendant, we must assume that he found the evidence established the custom. In these circumstances, the custom entered into and formed a part of the contract and, therefore, the defendant did all it was required to do under the contract when it ratably distributed the cars among its customers.

On March 20, 1917, defendant shipped a car of coal to plaintiff, but, before delivery, diverted it to another customer. Plaintiff contends that this was a conversion of the car of coal, and that it was entitled to the value of it. Apparently the defendant retained the bill of lading, and in these circumstances, par., 3, sec. 20, ch. 121-a, Rev. St. [Callaghan's 1916 Stat. ¶ 10021(23)] authorized defendant to take possession of the car as against the buyer, and since plaintiff was in default at the time of the diversion, he can make no complaint.

Plaintiff also argues that defendant's claim was not proper subject-matter of set-off. We think the point is untenable. Defendant's claim was for liquidated damages, being the purchase price of the two cars of coal as agreed upon, and in such circumstances it can be set off in an action brought for damages for an alleged breach of contract.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

Thomson, P. J. and Taylor, J., concur.