· **Harold Howe et al., trading as Howe Ice Machine Company, Appellees, v. Albert Fulton, trading as Fulton Coal Company, Appellant.**

## Gen. No. 27,180.

1.  APPEAL AND ERROR—*preservation in municipal court of Chicago of objections to oral instructions.* Under rule 8 of the municipal court of Chicago in order to preserve for review any alleged error in the oral instructions, objections thereto should specifically point out the portion of the charge objected to.

2.  MUNICIPAL COURT OF CHICAGO—*refusal of written instructions where oral instructions previously given.* In the municipal court of Chicago, where the jury are instructed orally, the court may properly refuse to give written instructions submitted though they contain proper elements.

3.  PLEADING—*claims of set-off for payment on account and for damages for breach of contract as inconsistent defense.* In an action to recover the balance of the purchase price for a refrigerating plant installed for defendant, claims of set-off for money paid on account and for damages for breach of the contract are inconsistent, the first claim being based upon the theory of a rescission of the sale and the others upon affirmance of the sale and its breach by defendant.

4.  SALES—*claim of set-off for breach of contract as affecting proof of rescission.* In a suit to recover the balance of the purchase price for a refrigerating plant installed for defendant, where defendant wrote to plaintiff stating he would pay no more on the account, that plaintiff had not complied with the contract, that therefore defendant canceled the contract and demanded a return of the money paid, and this letter was introduced in evidence by defendant and a claim of set-off was made for the money paid, the court properly instructed the jury upon the theory that the letter constituted an election to rescind and to recover the money paid though defendant also included in his claim of set-off items of damages for breach of the contract.

5.  SALES—*inadmissibility of evidence by defendant of damages from breach of contract where rescission by defendant shown.* In an action for the purchase price of machinery installed for defendant, where defendant had, by demanding a return of the money paid on the account, elected to rescind the contract, testimony offered by defendant as to the present value of the machinery to show damages sustained and of loss of probable profits resulting from

inability to use it, was properly excluded because inconsistent with the theory upon which the action was brought.

6. SALES—*admissibility of evidence of present value in action for purchase price.* In an action for the purchase price of machinery where it had remained in defendant's plant unused and unattended since its installation, testimony as to its present value was properly excluded because, under such conditions, the testimony would not show its value when installed and in working condition.

7. SALES—*inadmissibility of evidence by purchaser of loss of profits by failure of seller to complete performance.* In an action for the purchase price of a refrigerating plant installed in defendant's ice house, testimony offered to show loss of profits on sales of ice, which would have been made had the installation been completed in the time provided for in the contract, was properly excluded because such damages were too remote, contingent and speculative and because defendant had waived the provision of the contract as to time of completion.

8. SALES—*inadmissibility of evidence of expenditure by purchaser for installation of machine, where contract rescinded by purchaser.* Where defendant in an action for the price of machinery installed elected to rescind the contract and recover the money paid, the court did not err in excluding evidence relative to amounts expended by defendant in preparing his building for installation of the machinery.

9. SALES—*admissibility in action for purchase price of evidence of causes for delay in completing performance.* In an action for the purchase price of machinery installed for defendant, no prejudicial error was committed in permitting plaintiffs' witnesses to testify as to difficulties encountered in getting materials from third parties during the progress of the work in view of a clause in the contract that all agreements were contingent upon strikes "or other causes beyond our control," and where the evidence disclosed that delay in the completion of the work was waived by defendant as a basis for a rescission of the sale.

10. SALES—*sufficiency of evidence to support judgment for balance of purchase price as against claim of set-off.* In an action to recover the balance of the contract price for machinery installed for defendant, where defendant, by set-off, sought to recover the amount already paid and damages for defects and delay in the installation of the machinery, evidence *held* to sustain a judgment for plaintiffs.

Appeal from the Municipal Court of Chicago; the Hon. JOHN F. HAAS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed July 11, 1922.

Howe v. Fulton, 225 Ill. App. 589.

Rehearing denied July 24, 1922. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On April 8, 1921, the plaintiffs recovered a judgment, after verdict, in a first-class action in assumpsit in the municipal court of Chicago against the defendant, Albert Fulton, trading as Fulton Coal Company, for the full amount of their claim, $1,055, being the balance claimed to be due for furnishing and installing a refrigerating plant in an ice storage house, owned by defendant, under a written contract. executed by the parties and dated March 8, 1919. This appeal followed.

By the terms of the contract plaintiffs agreed to furnish and install certain machinery, piping and other articles mentioned for the price of $1,925, payable as follows: 25 per cent cash when the contract was signed, 25 per cent cash when the material was delivered, 25 per cent cash when the contract was completed and the plant in operation, and 25 per cent by note, due 30 days after date of third payment. By subsequent agreement a one-phase motor was substituted for a three-phase motor at an additional cost of $80, thereby making the total price $2,005. The contract contained the following clauses, among others:

"GUARANTEE. * * * We also guarantee that this plant is equipped with ample refrigeration to keep the ice storage at the proper temperature.

"SERVICES. The Company (plaintiffs) will furnish all material, install and erect plant as per the specifications, and run a three days' test after completion.

"STARTING THE PLANT. * * * The plant shall be considered as being started when the contract is completed according to the specifications, and payment shall be made accordingly."

"AGREEMENT. All agreements are contingent upon strikes, accidents or other causes beyond our control.

"TIME OF COMPLETION. The above machinery and equipment can be installed and put in operation by May 1, 1919."

Plaintiffs in their statement of claim alleged that they duly performed the contract on their part and installed the machinery and equipment, that defendant has paid them on account the sum of $950, and that there is due them the balance of $1,055.

Defendant in his affidavit of merits denied that plaintiffs had duly performed their contract, and specified three particulars wherein plaintiffs had failed so to do, viz.: (1) failure to install and put in operation the machinery and equipment by May 1, 1919, (2) failure to make a three days' test after completion and (3) failure to equip the plant with ample refrigeration to keep the ice storage at the proper temperature.

During the trial, by leave of court, defendant filed a statement of claim of set-off, in which he alleged, in substance, that at the time the contract was signed he owned and operated an ice storage house on his premises in Chicago; that, the supply of natural ice being scarce, he had arranged with a certain manufacturer of artificial ice for the purchase of 200 tons of such ice, providing refrigerating machinery could be installed in said storage house sufficient to produce such a temperature that ice could be stored therein and kept during the hot summer months without melting; that plaintiffs were informed of the arrangement and of defendant's purpose, examined said storage house, and afterwards tendered to defendant the contract sued upon, which defendant signed, relying upon the experience of plaintiffs; that thereafter defendant prepared the storage house for the installation of the machinery and in so doing expended the sum of $887.69; that plaintiffs failed to perform their contract in the particulars mentioned in defendant's affidavit of merits; that by reason thereof defendant has "sustained great loss and damage and has been deprived of the use and benefit of his said building; whereof the plaintiffs have had due and timely notice"; and

that defendant claims damages in the total sum of $2,837.69, being for money paid on account of said purchase price, $950, *and* for money expended in preparing said storage house for the installation of said machinery, $887.69, *and* for "loss of profits because of inability to store ice when it was available, $1,000." By agreement, and in order to prevent a continuance, plaintiffs were excused from filing an affidavit of merits to defendant's claim of set-off. From statements of plaintiffs' attorney made in open court and from testimony given on plaintiffs' behalf, it appeared that plaintiffs' defenses to said claim of set-off were, in substance, (1) that plantiffs' failure to complete the contract by May 1, 1919, was due to unavoidable delays in receiving materials from third parties and to causes beyond their control, of which defendant had notice, and that defendant acquiesced in those delays and waived the provision of the contract as to time of completion of the plant; (2) that defendant also waived the provision as to the three days' test; (3) that the plant, as finally installed, was sufficient to produce a "proper temperature" and to prevent any ice that might be stored therein from melting; and (4) that by defendant's letter of September 12, hereinafter referred to, he elected to rescind the contract and offered to return the machinery and equipment and then claimed as his damages the sum of $950 which he had theretofore paid to plaintiffs.

Defendant's ice storage house was an old one, 37 feet in length and 24 feet in width, with a pitched roof. For the purpose of installing the refrigerating plant defendant put in a false ceiling or floor, 13 feet above the first floor. Above this false ceiling plaintiffs erected their machinery and also put in the ice storage room 600 lineal feet of 2-inch direct expansion coils, with evaporators connected to the same and hangers for supporting them. Prior to the signing of the contract defendant had verbally arranged with

John Anderson, a manufacturer of artificial ice, for the purchase from him by May 10, 1919, of 200 tons of such ice at $2 per ton, to be stored in defendant's ice house, providing proper refrigerating machinery could be installed therein. Anderson told defendant that he knew of a firm who could supply such machinery and, with defendant's consent, he telephoned Harold Howe of plaintiffs' firm, informed him of defendant's purpose and of said verbal agreement, stated the condition of the building, its location and dimensions, and the proposed remodeling thereof, that it would be insulated with 16 inches of dry sawdust, and that he desired the refrigerating plant to be completed about May 1, 1919, so that he could deliver his artificial ice to defendant about that time. Upon this information given him, Howe figured out the amount of refrigeration required, the size of the machinery and equipment, drafted the contract and delivered duplicate copies to Anderson, who in turn presented them to defendant, and the latter signed them, drew his check for $500, payable to plaintiffs, for the first payment, gave the check and both copies to Anderson, and subsequently received one copy of the contract back by mail, signed by plaintiffs. Howe testified that he did not talk with defendant or see the building at any time before the contract was signed. Defendant, on the contrary, testified that prior thereto both he and Howe inspected the building and discussed the terms of the contract. Shortly after the contract was signed, Howe examined the building and began ordering materials. The work was not completed by May 1 as stipulated, because of delay in the delivery of certain equipment and materials ordered by plaintiffs of third parties. The one-phase motor was delivered about May 1. Later in that month some machinery and equipment were installed and then plaintiffs' men were taken off of the work because of lack of other equipment and materials. About June 12 the compressor and all

other stipulated equipment were delivered, and at that time defendant, at plaintiffs' request, made a further payment to them of $450. In two or three weeks thereafter plaintiffs had finished their work, and about July 1, a first test was made, and the temperature of the room was brought down from 90 to 60 degrees. On July 2 plaintiffs wrote defendant that the "contract has now been completed" and, in accordance with the terms thereof as to payments, requested a check for $525, and that defendant sign a 30-day note for $530. Defendant testified that on receipt of this letter he telephoned Howe and said he would not sign the check or the note because he did not know what the equipment would do and therefore wanted tests made. Plaintiffs ran tests on August 4, 5 and 6, from about 8 a. m. to 4 p. m., and reduced the temperature of the room to about 60 degrees. About September 4, after a certain pulley had been changed, another test was run for about the same period during the day and the temperature was reduced from 85 to 60 degrees. There was evidence that the building had not been properly insulated by defendant by the use of *dry* sawdust, and there was conflicting expert testimony as to whether the machinery and equipment, as installed, would maintain the proper temperature in the building, properly insulated, so as to prevent artificial ice therein from melting. Howe, being asked while on the stand why plaintiffs did not run a longer test at the last time they operated the plant, testified: "After making our adjustments, making sure the system was tight and then charging and running it, I went to Mr. Fulton and asked him for a payment on the contract; he said that he would not pay me any more on the contract because the plant *was not put in on time,* so I took the man off the job; he said it was too late and that he *could not get any ice put in the house,* so that he could not use it." Fulton denied making such statements to Howe, but the latter's tes-

timony was corroborated by plaintiffs' witness Hurd, a steamfitter and erecting engineer, employed by them to assist in the erection of the plant, who testified in substance that, when he was assisting in running the test about September 4, Fulton said "he could not get any ice any more to put in there," and that "he was not going to use any ice and there was no use going ahead with it." Fulton also denied making such statements to Hurd at any time.

It was disclosed by defendant's testimony, and that of his witness, Bright, a mechanical engineer specializing in refrigeration, that in August, 1919 (before the final test of the plant was made), defendant talked with Bright about having the latter erect for him a separate plant for the *manufacture* of artificial ice, as distinguished from a plant in which to *store* such ice, on another piece of property about two blocks away from the storehouse in question; that defendant in September, 1919, under Bright's supervision, commenced building such other plant, having a capacity of making 70 tons of ice every 24 hours; that this plant was completed in the summer of 1920, when defendant began to operate it, and is still doing so; and that defendant never attempted to operate the plant which plaintiffs erected in the storehouse in question.

On September 12, 1919, defendant wrote plaintiffs as follows:

"Referring to your contract * * * for the installation and erection of one complete refrigerating plant at my premises, * * * I hereby notify you that I will not pay you any more money on account thereof.

"The machinery and equipment specified in said contract were to have been installed and put into operation by May 1, 1919. You guaranteed to equip the plant with ample refrigeration to keep the ice storage at the proper temperature. You agreed to run a three days' test after completion.

"None of these provisions of the contract has been performed by you. I, therefore, *cancel the contract*

and hereby *demand that you return the money* which I have already paid you, to-wit, the sum of $950. You will please remove your machinery from my premises at once."

Defendant further testified that this letter was the first intimation given by him to plaintiffs that he had decided that he would not take the plant as installed. Plaintiffs did not return the $950 to defendant as de-' manded, and made no attempt to remove the machinery and equipment of the plant, and on November 1, 1919, commenced the present action.

At the close of all the evidence the parties requested the court to give to the jury a number of written instructions, prepared by respective counsel, but the court refused to give any of them and marked them refused, and thereupon charged the jury orally. They returned a verdict finding the issues against defendant and assessing plaintiffs' damages at the sum of $1,055.

EARL C. HALES and JOHN J. SONSTEBY, for appellant.

THOMPSON, TYRRELL & CHAMBERS, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is first contended by counsel for defendant that the court erred in giving certain instructions contained in the oral charge to the jury, and also in refusing to give certain written instructions requested by defendant. Rule 8 of the rules of the municipal court, contained in the present record and properly certified, provides that objections to the giving or refusing of oral instructions must be specific and made immediately upon the conclusion of the charge and before the jury retire. It appears that in the present case at the conclusion of the oral charge the court inquired if the attorneys had any objections to make, whereupon the attorney for the plaintiffs made a *gen-*

*eral* objection and exception, and then the court asked
if the objection referred to the instructions not given,
and, upon said attorney replying in the affirmative,
the attorney of defendant said: "And the same
here." No *specific* objections were made to the court's
charge by either attorney. Under said rule 8 and
numerous decisions it is well settled that, in order to
preserve for review any alleged error in the oral in-
structions, objections thereto should specifically point
out the portions of the charge objected to. (*Grollman
v. Lake Geneva Piano Stool Co.*, 147 Ill. App. 332;
*Pecararo v. Halberg*, 246 Ill. 95; *Briggs v. Joseph &
Bros. Co.*, 175 Ill. App. 438.) And it has been decided
that in the municipal court where the jury is in-
structed orally the court may properly refuse to give
written instructions submitted, even though they con-
tain proper elements. (*Morton v. Pusey*, 237 Ill. 26,
34; *Briggs v. Joseph & Bros. Co.*, supra.) We have,
however, considered the court's charge and defend-
ant's refused instructions, in connection with defend-
ant's claim of set-off and the facts as disclosed in the
present record, and are of the opinion that on the real
issues of fact in the case the jury were fairly and
sufficiently instructed and that defendant was not prej-
udiced by the court's action in refusing to give any of
the offered instructions.

In subsection 1 of section 69 of the Uniform Sales
Act (Cahill's Ill. St. ch. 121a, ¶ 72) it is provided:

"(Remedies for breach of warranty.)    (1)    Where
there is a breach of warranty by the seller, the buyer·
may, at this (his) election—

"(a)    Accept or keep the goods and set up against
the seller, the breach of warranty by way of recoup-
ment in diminution or extinction of the price.

"(b)    Accept or keep the goods and maintain an
action against the seller for damages for the breach
of warranty.

"(c)    Refuse to accept the goods, if the property
therein has not passed, and maintain an action against

the seller for damages for the breach of warranty.

"(d)  Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."

When, after plaintiffs had installed the machinery, piping and other equipment and, as they claimed, had completed their contract and had demanded payment of the balance of the purchase price, defendant wrote plaintiffs the letter of September 12, 1919, he then made his election to rescind the sale.  He therein stated that he would not pay plaintiffs any more money and he demanded the return of the $950, which he had previously paid plaintiffs, and that they remove the machinery from his premises at once.  He further stated, in substance, that he made these demands because the machinery and equipment had not been installed and operated by May 1, 1919, as stipulated, and because plaintiffs had not run a full three days' test after completion as agreed, and because plaintiffs had not equipped the plant with ample refrigeration to keep the ice storage at the proper temperature as guaranteed.  The evidence clearly showed that defendant by his acts had waived his right to cancel the contract and rescind the sale on account of the failure of plaintiffs to complete their contract by May 1, 1919. Indeed, counsel for defendant in their reply brief concede this.  As to the provision in the contract relative to plaintiffs' running a three days' test after completion, the evidence showed that, after the machinery and equipment had been fully installed and the plant operated, a test thereof was run for three successive days, early in August, 1919, at which time the temperature of the room, without any ice in it, was reduced during very warm weather about 30 degrees, and when the building or room had not been properly insulated by defendant by the use of *dry* sawdust, which, as defendant's expert witness testified, is a

partial nonconductor of heat, while *wet* sawdust is a conductor. And it is to be noticed that the provisions of the contract as to the three days' test do not condition defendant's acceptance of the plant upon any particular showing made during said test, there being no guaranty to reduce the temperature of the room to any stated degree or degrees. Counsel for defendant admit in their printed argument that defendant did not attempt to cancel the contract because of plaintiffs' failure to run a proper three days' test. By virtue of defendant's said election to rescind the sale the main issue of fact to be determined by the jury therefore was, whether the plant had been equipped with ample refrigeration to keep the ice storage at the proper temperature, and as to this issue the testimony was conflicting, and we think the court in the oral charge fully and fairly instructed the jury as to this issue. During the trial defendant filed his claim of set-off in which he claimed damages in the total sum of $2,837.69, being (1) for the money he had previously paid on account, $950, *and* (2) for money expended in preparing the storage house for the installation of the machinery and equipment, $887.69, *and* (3) for loss of profits, $1,000. The first claim is based evidently on the theory of a rescission of the sale and the other two on the theory of an affirmance of the sale and damages for a breach of the guaranty or warranty contained in the contract. These theories are inconsistent. We understand it to be the law that a buyer, when sued for the balance of the purchase price, cannot set up as a defense the rescission of the contract and a claim for the amount already paid on the purchase price, *and* at the same time claim damages for a breach of the contract. (*Houser & Haines Mfg. Co. v. McKay,* 53 Wash. 337; *Blake-Rutherford Farms Co. v. Holt Mfg. Co.,* 70 Wash. 192; *Abraham v. Browder,* 114 Ala. 287, 290.) In 30 Amer. & Eng. Encyc. Law (2nd Ed.), p. 199, it is said: "The buyer

may not pursue two inconsistent remedies; if he chooses to exercise the special remedy by returning the article to the seller, he is then confined to a recovery of the purchase money paid, and cannot maintain an action to recover damages for a breach of the warranty.'' In Williston on Sales, sec. 612, p. 1017, it is said: ''It seems to be generally assumed that if the buyer elects the remedy of rescission he is thereby precluded from bringing an action for damages, and it has been so decided. The Sales Act adopts this rule.'' And it has been decided that under this Sales Act a buyer has four distinct courses open to him in case of a breach of warranty, but, having adopted one, no other remedy is available to him. (*Impervious Products Co. v. Gray*, 127 Md. 64, 69.) And the two inconsistent remedies cannot both be prosecuted at the same time. (*Park v. Richardson & Boynton Co.*, 81 Wis. 399, 402.) In giving the charge in the present case the court evidently proceeded upon the theory, and we think properly so, that defendant's letter constituted an election by him to rescind the sale and to attempt to recover back what he had already paid. That defendant did not afterwards change his position as taken in the letter is evidenced by the facts that he himself introduced said letter in evidence, and that in his claim of set-off filed during the trial he claimed the right to recover the money back. He also in said claim of set-off made other inconsistent claims which he attempted at the same time to enforce.

It is also contended by counsel for defendant that the court erred in refusing to allow defendant's witness, Bright, to answer certain questions as to his opinion of the value of the machinery and equipment as *now* contained in the building. The argument is that this testimony should have been admitted because it would have tended to show the damages sustained by defendant, viz., the difference between the value of the machinery and equipment as installed and their

value if they had complied with the contract. We think this testimony was properly rejected because of defendant's said election and because, by the offered testimony, defendant sought to inject into the case his two inconsistent theories and his right to recover damages on each. The objection to the questions were properly sustained for another reason. The evidence disclosed that since the installation of the plant defendant had made no use of it, and it had remained idle and unattended. Its value at the time of the trial, under those conditions, would not show its value as when installed and in working condition.

Complaint is also made that the court erred in rejecting certain testimony of the defendant relative to the loss of probable profits which defendant might have made from the sale of ice during the summer which he expected to get from Mr. Anderson and could have stored in the building, had the plant been completed by May 1, 1919. We think that the admission of the testimony was properly refused because of defendant's said election and, further, because the expected profits were too remote, contingent and speculative (Williston on Sales, sec. 614, p. 1024; *Benton v. J. A. Fay & Co.*, 64 Ill. 417, 422; *Frazer v. Smith*, 60 Ill. 145, 147) ; and because it appears that defendant waived the provision as to time of completion of the plant. And in our opinion the court did not err in rejecting testimony offered by defendant relative to the amounts expended in getting his building ready for the installation of the machinery and equipment. Complaint is also made that the court erred in permitting plaintiffs' witnesses to testify as to the difficulties encountered during the progress of the work of installation in getting necessary materials from third parties, thereby causing the delay in the time of the completion of the plant. We do not think any prejudicial error was committed in these particulars, especially in view of the clause in the contract that all

agreements were contingent upon strikes "or other causes beyond our control." (35 Cyc. 248; *Consolidated Coal Co. v. Mexico Fire-Brick Co.*, 66 Mo. App. 296; *Hatfield v. Thomas Iron Co.*, 208 Pa. 478.) Furthermore, as above stated, the evidence clearly discloses that the delay in the completion of the work, as a basis for a rescission of the sale, was waived by defendant.

It is finally contended that the verdict is contrary to the manifest weight of the evidence. After a careful consideration of the evidence we are unable to say that this is so.

For the reasons indicated the judgment of the municipal court is affirmed.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.