Homer Altic, Appellee, v. Kelvinator Sales Corporation, Appellant.

Gen. No. 8,492.

Opinion filed April 14, 1931.

COVEY & WOODS, for appellant.

HAROLD F. TRAPP, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This suit was brought by the appellee, Homer Altic, in the circuit court of Logan county, against the appellant, Kelvinator Sales Corporation, to recover damages alleged to have been sustained by him, resulting from a breach of a warranty, made in connection with the sale by the appellant of a refrigerator unit to the appellee. The refrigerator unit was purchased by the appellee to be used in his restaurant business which is located in the City of Lincoln.

Concerning the warranty alleged to have been breached, the declaration alleges, that "said defendant in consideration of said purchase by the plaintiff and of said payment by the said plaintiff so made and to be made then and there promised, agreed, and warranted to and with the said plaintiff that the said refrigeration plant so furnished and installed by said defendant corporation should and would provide and maintain a temperature in said refrigeration ice boxes between freezing and forty degrees Fahrenheit."

To the declaration the appellant pleaded the general issue; and the case proceeded to trial, which resulted in a verdict and judgment in favor of the appellee for the sum of $650. This appeal is prosecuted from the judgment.

Several errors are assigned and argued by the appellant for reversal of the judgment. It is contended by the appellant that the proofs do not show that the agent or agents of the appellant were duly authorized nor had the power and authority to bind the appellant by the verbal warranty which was relied upon by the appellee and forms the basis for the right of recovery in this suit. It may be said in reference to this contention that while no express authority is shown by

the evidence, the evidence shows by necessary implication the authority of the agent or agents to make the sale of the refrigerator unit in question, and to make the warranty with regard to the temperature to be maintained in the refrigerator as alleged in the declaration. The evidence also shows that the sale and the warranty made in connection therewith was ratified by the appellant by delivering and installing the refrigerator, and afterwards attempting to bring the refrigeration to conform to the requirements of the warranty. Concerning these matters, the appellee testified as follows: "Met LaBaw and a Mr. Blake in Lincoln in January, 1928. Blake was a Kelvinator salesman from Peoria. . . . LaBaw brought him to my place of business and introduced him and told me he was the salesman from Peoria, that I could tell him what I wanted and he would be able to sell me as he didn't know just the size machines that I needed. . . . I said to him I was in the market for a new ice box and refrigerating plant and he showed me pictures of them, and I bought a large ice box. It was 6½x6½, 29 inches deep on the inside, cork lined and zinc facing. . . . I had a small ice box there and I wanted a plant that would do the work for both of them, so I wanted a plant that would keep both boxes cold, so LaBaw and Blake inspected this one and they told me it was fit for a unit, so I bought a large box of them. They knew the dimensions of it, they measured this one all around and knew the dimensions of it, so I says to this man: 'Have you a machine and outfit that will keep my large box between freezing and 40 degrees?' And he says, 'Yes.' I asked him what that machine would cost me, that outfit would cost me, so they figured it out, and I didn't care anything about the small box, it was the large box I was after, the meat box, so he told me what it would cost me, so I said: 'You guarantee this machine?' . . . I says to him, 'you will guarantee this machine to keep my box between freezing and 40 for

this money?' And he says, 'Yes, sir, I will do it.' . . . I said that to Blake, the Kelvinator salesman. . . . I relied upon and believed that promise by Blake. . . . I bought the refrigerating plant he showed me that day. Mr. LaBaw was then in business in the City of Lincoln, engaged in the electrical business. . . . I gave a check for $250.00 that day to Mr. LaBaw when I gave them the order and before they went out of the house. That check was later paid by the bank. . . . I think it was $650.00 that I paid, either in cash or by check for this refrigerating machine. The refrigerating machine was installed in my place of business in the spring sometime, or late in the winter, I wouldn't attempt to make any dates. . . . Mr. LaBaw installed it. . . . The refrigerating plant was installed on the large ice box. . . . After the refrigerating unit was installed it didn't just give satisfaction, and I made immediate complaint to Mr. LaBaw. It would maintain a temperature between 40 and 50. I was able to reduce the temperature below 40 at times but not very often. Nine-tenths of the time it was between 40 and 50. When the weather was warm in the summer time it never would reach 40. I complained to Mr. LaBaw and he tried to fix it and didn't succeed. Made my first complaint to LaBaw not less than two months after it was installed. When the weather was warm, the temperature was high. . . . Afterwards the temperature of the machine ranged from 40 to 65.''

Guy LaBaw who acted as agent for the appellant and who was referred to in the appellee's testimony, testified that he was engaged in the electrical business in the City of Lincoln, and concerning his relation and the matters in controversy testified as follows: ''I went to their school and was supposed to be their service man in this district and this territory, and also to sell their product. . . . Am acquainted with Homer Altic, have known him four or five years. I went to his place of business in Lincoln during the month of

January, 1928, to see about selling a refrigerating plant to him for his restaurant. It was about the first of the year. A man by the name of Sam Blake went with me. Had known Mr. Blake about ten years. At the time he went with me to Altic's place of business in January, 1928, his work was selling Kelvinator refrigerating machines. . . . I had heard Altic was in the market for an ice machine, and the man happened to be in my place to help me along if I had any prospects or go out and make these sales himself. So I took him down and introduced him to Altic to talk over this icing machine business, so he figured on the ice box. Mr. Altic, Mr. Blake and I turned the proposition entirely over to Mr. Blake because I didn't know anything about it myself. . . . Mr. Blake said he could maintain any temperature he wanted in there, between 40 and freezing. . . . The conversation between Blake, Altic and myself was on December 6, 1927. Plaintiff's Exhibit 1 was made on January 21st after that. The total amount paid by Altic on this refrigerating unit was about $650.00. I received and installed the refrigerating plant in Altic's place of business. It was installed on January 21st, the same time that the paper was made out. It was completely installed at the time the paper was made out. After it was installed, we watched the temperature and tried to get the temperature that Mr. Altic wanted. The first two months it was cold and the machine seemed to do fairly well, it ran along about 40. When it began to get warm it was used more and the temperature began to raise and I tried to adjust the machine to lower temperature and did adjust it, but for some reason or another I had grief with it from that time on, I couldn't get it to stay in one place, either too cold or too hot. I can't attempt to say how many times I was down there, sometimes worked three or four hours at a time. I was not able to maintain temperature between freezing and 40 continuously. I wrote a letter for a service

man and John Powers came. He was a service man from the Kelvinator factory at Detroit. He came several times. I was with him and it never worked any better afterwards. The last time I wrote them I gave a description of the way the machine operated and left the complaint with them.''

Thereafter the appellee by his attorney, Mr. Trapp, wrote the appellant a letter and notified him that there had been a breach of contract in the sale of the refrigerator cabinet to the appellee, that the two special freezing units which were warranted to maintain a temperature between freezing and 40 degrees Fahrenheit, in spite of several visits by its service men and several attempts by LaBaw to remedy it, had wholly failed to perform the service which they were warranting to perform; and that under date of July 12, Mr. V. W. Spencer of its service department had agreed to take the matter up and report the following week, but nothing had been heard from him. To the letter referred to, the appellant replied on August 9, 1930: ''Your letter of July 26 referring to the Kelvinator equipment now installed for Mr. Altic has been referred to the Commercial Department. Quite naturally we wish to do everything in our power to correct this situation and give Mr. Altic the satisfactory operation which he has had a right to expect from the Kelvinator equipment. With this end in view, we have made a study of the requirements and will furnish Mr. Altic a new type of cooling units, no charge, to replace the old. The material which it is proposed to furnish is of a later design and under ordinary conditions will give satisfactory operation. . . . We are asking Mr. LaBaw to remove the old brine tanks and install new cooling units.''

The appellee through his attorney replied by a letter to the appellant's offer to put the refrigerating unit in question in the condition required by the warranty, that if the company would install such a machine as

would comply with the original contract and reduce to and maintain a temperature between freezing and 40 degrees Fahrenheit and would furnish the service necessary to place the same in running order, he would allow the appellant to do so, but that he preferred to return the plant and have a refund of the money paid by him; but the appellant never carried into effect its offer, nor accepted the appellee's offer to return the refrigerating unit and have his money refunded.

It is apparent from the testimony above quoted, and which is not in any way contradicted by the appellant, that the appellant recognized the authority of the agents who made the sale of the refrigerating unit in question, and the validity of warranty made in connection therewith; and it also shows that there was a breach of the warranty, and that in consequence thereof, the refrigerator unit was not in a fit condition for the use for which it was sold to the appellee.

It is also contended by the appellant that the sale in question was made by virtue of a written contract; that a parol warranty cannot be shown where there is a written contract of sale between the parties. The written contract referred to was introduced in evidence as a matter of a defense to the plaintiff's right of recovery under the verbal contract of sale and warranty which is referred to in the testimony of the witnesses herein set forth. It is sufficient to say concerning this contention that the evidence shows that the sale and warranty in question were not made by virtue of the written contract, but by virtue of the verbal contract averred in the declaration; and that the refrigerator unit had been delivered to the appellee and installed in his place of business in conformity with the verbal contract before the execution of the written contract. The written contract is a conditional sale contract which apparently was executed after the refrigerator unit had been installed, and was taken by appellant as security for the unpaid balance of the

sale price of the refrigerator unit. The rule of law contended for by the appellant therefore has no application to the facts proven in this case.

It may also be pointed out that under the appellant's plea the only issue in this case was whether the verbal contract of sale and warranty was entered into by the parties as averred in the declaration; and the jury properly found that issue in favor of the appellee.

The appellant raises another question, namely, that the damages assessed represent the amount of the purchase price paid by the appellee; and that the appellee did not elect to seek to recover other damages sustained by him on account of the breach of the warranty. It appears from the evidence that the appellee after the breach of warranty offered to return the refrigerator unit purchased by him; and therefore under the provisions of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 4 *et seq.*, the appellant was liable to repay to the appellee the amount of the sale price for the article purchased, and would be the measure of damages if he elected to recover for the same. The evidence also tends to show that the refrigerator unit, by reason of the fact that it did not meet the requirements of the warranty, was practically useless and unfit for the purpose for which it was sold to the appellee, and therefore was valueless. The measure of his damages therefore, under these circumstances, would also be the amount which he paid for the article purchased. The appellee on the trial elected to seek a recovery of the amount of the purchase price and limited his proof of damages to that alone; either as a matter of damages shown by the evidence for breach of warranty, or under the election to recover the purchase price as damages, the verdict of the jury was proper. *Howe v. Fulton*, 225 Ill. App. 589; *Burke v. Instant Heat Co.*, 236 Ill. App. 275.

The record does not disclose any reversible error, and the judgment is therefore affirmed.

*Judgment affirmed.*