# SCULLIN STEEL COMPANY v. MISSISSIPPI VAL-
## LEY IRON COMPANY, Appellant.

In Banc, May 23, 1925.

1. **ASSIGNMENTS: Under Points.** Assignments of errors, although not separately and formally made, if asserted under various subdivisions of points and authorities and argument, are accepted as a compliance with Rule 15.

2. **CONTRACT: Sales: Terms of Delivery: Parol Proof: Prior Conversations.** Parol proof is not competent to vary the terms of an unconditional and unambiguous contract. Where by its written contract defendant unconditionally agreed to deliver ten thousand tons of pig iron in "equal monthly installments during March, April, May and June" it cannot show by parol proof that by previous conversations and negotiations and by the acts of the parties it was agreed that the time of delivery was conditioned upon its having its manufacturing plant completed by March 1st.

3. ———: ———: **Time of Delivery: Waiver of Conditions: Different Cause of Action: Burden of Proof.** Unless the defendant seller sustained the burden of showing a change or waiver of the conditions expressed in the written contract sued on as to the time of delivery of the goods sold, its contention that the plaintiff purchaser declared upon one cause of action and was permitted to recover upon another and different cause cannot be allowed.

4. ———: ———: **Delivery of Essence: Waiver: Acceptance of Small Installments: Conditions beyond Control.** Plaintiff and defendant were both manufacturers. The product made by defendant was a material used by plaintiff in the manufacture of other products, and the fulfillment by plaintiff of its own engagements depended upon obtaining the material which defendant undertook to furnish. In November defendant in writing proposed to sell and deliver to plaintiff ten thousand tons of "machine-cast pig iron" in "equal monthly installments during March, April, May and June," and "if shipment is to be made in installments this contract for all purposes is to be treated as separate for each installment" and that defendant "should not be liable in damages for failure to deliver caused by strikes, accidents or other causes beyond our control;" and this written proposal was promptly accepted by plaintiff's acceptance written thereon. Plaintiff declared on the contract in a suit for damages for failure to deliver, and defendant urges ex-

tension of time of delivery and waiver of conditions. Defendant made no deliveries until October; its plant was not completed until May 31st. In May, June and July plaintiff advised defendant that its stock of pig iron was low, and that it wanted the iron from defendant. In August plaintiff wrote defendant, reminding it of the contract to ship ten thousand tons in equal monthly installments during March, April, May and June and charging "default as to all of it," and stating that "you recently promised to ship some to us during August and we are willing to accept such belated delivery as in full compliance with the contract, provided you do ship," and asking defendant to "please let us know exactly when we may expect delivery." The next day defendant replied by letter that "shipments have not been made because of circumstances entirely beyond our control;" that "we intended blowing on the first of March, but were prevented on account of not being able to obtain necessary materials to complete the reconstruction of our plant;" that "we were also delayed by labor troubles;" that "when we finally did blow we experienced considerable trouble with the coke, in fact were unable to make any basic iron of your specifications;" that "at the present time our furnace is banked, awaiting a supply of coke which we expect will produce the various grades of iron for which we have contracts;" that "when our supply of coke which is enroute reaches us we can determine in a very few days just how soon we will be able to begin supplying you with basic," but did not say "exactly," as requested, when delivery would be made. No reply was made to this letter. In October defendant notified plaintiff that it had four cars of pig iron, and these cars were shipped, accepted and paid for at the contract price. Two of these cars were "off basic," and shortly afterwards defendant offered to ship more "off basic" iron, which plaintiff did not want and would not accept. Plaintiff told defendant that plaintiff wanted iron according to specifications, but did not want iron shipped that was not according to specifications, and defendant answered that "as soon as they could make it they would ship it." A week later plaintiff told defendant to ship no more iron; that it would take no more shipments on the contract. *Held, first,* that the contract was explicit in its statements of the time of delivery, and time of delivery as specified was of the essence of the contract; and, *second,* that it cannot be ruled, as a matter of law, that the time of delivery was extended by subsequent delivery, or that there was a waiver of the delay to deliver within the stipulated time.

5. ———: ———: Acceptance: Waiver: Small Deliveries out of Time: Applied on First Contract Installment. Acceptance out of time of small shipments, under a contract calling for delivery in install-

ments within designated months, does not of itself waive the right to require the delivery of other installments; and there being no other sufficient evidence to establish waiver, the amount paid on these out-of-time small shipments should in the instructions on the measure of damages be applied to the first installment named in the contract.

6. ———: ———: Failure to Deliver: Waiver: Condition of Plant: Evidence: Exclusion: Later Admission. It is proper, as throwing light on the question of defendant's pleaded waiver of delay in delivering goods sold within the specified time, to admit evidence showing the condition of the plant of the manufacturing seller and the buyer's knowledge thereof; and the trial court having first excluded such evidence, whatever error was committed by the ruling was cured by a subsequent one admitting the evidence, the contract itself, specifically expressing the terms agreed upon, having been executed under the known conditions.

7. ———: To Sell and Deliver: Construed to Manufacture and Sell: Respondent's Contention: Failure to Deliver. The language of the contract between plaintiff and defendant, both of whom were manufacturers, was "to sell and deliver" ten thousand tons of machine-cast pig iron, and plaintiff sued for damages for failure to deliver within the time specified, and contended at the trial and contends on appeal that, since there was machine-cast pig iron of the named specifications to be had in the market, defendant could have purchased it and performed the contract. Defendant made no effort or offer during the period covered by the contract to purchase iron of like specifications. The verdict was for plaintiff, and defendant alone appeals. *Held, first,* that defendant was not injured by instructions construing the contract to be one to manufacture and deliver, it being evident from the circumstances that the parties had in contemplation the manufacture by defendant of the iron to be delivered under the contract; and, *second,* as plaintiff did not appeal, its contention is not for decision, and is not for consideration except as an argument that defendant made no effort to comply with the contract.

8. ———: To Manufacture and Deliver: Failure to Deliver: Extensions and Waiver: Relief by Causes beyond Control: Ejusdem Generis: Cold Weather. A clause in the contract of a manufacturer relating to the manufacture and delivery, within specified months, of pig iron, that "we shall not be liable in damages for failure to deliver caused by strikes, accidents or other causes beyond our control," refers to things of the same kind as those enumerated, namely, strikes and accidents, and does not include extremely cold weather in the vicinity of the factory, nor delay in receiving gravel

and sand necessary in the construction of the plant, caused by extremely cold weather in the distant states in which they were obtained.

9. ———: **To Manufacture and Deliver: Interference of Cold Weather: Inability to Obtain Coke.** Cold weather can have nothing to do with the manufacturer's delay in delivering his products within the time specified in his contract where the sole cause of the delay was his inability to obtain coke.

10. ———: **To Manufacture and Deliver: Failure to Deliver: Causes beyond Control: Inability to Obtain Coke: Unsuited to Uses: Assumed Risk.** Where the contract for the delivery of pig iron within designated months declared that the defendant manufacturer would not "be liable in damages for failure to deliver caused by strikes, accidents or other causes beyond our control," his inability to procure necessary coke for use in making the iron cannot be held to exempt him from liability for delay in delivering the iron. Although ten days before the first month in which the deliveries by four monthly installments were to begin he contracted for the delivery of coke and the coke delivered was not suited to his purpose, and he was unable to get suitable coke elsewhere until four months after the delivery period had expired, those things would not relieve him from liability to pay damages for failure to deliver within the time expressly specified in his written contract. He assumed the risk of obtaining the necessary coke as a material to be used in the manufacture of the pig iron, and inability to obtain coke was not a strike or an accident or other cause beyond his control within the meaning of the previously executed contract.

11. ———: **To Manufacture and Deliver: Failure to Deliver: Causes beyond Control: Inability to Obtain Coke: Testimony in Rebuttal: Admitted Out of Order: Estoppel.** In an action for damages for failure to deliver pig iron within the time specified in the written contract, defendant pleaded as a part of its defense its inability to procure coke necessary for the manufacture of the iron. Plaintiff having produced a witness to prove the prices of iron, was permitted to show by him that coke was obtainable in the vicinity during the delivery period, and the permission was granted for the reason that the witness was about to leave the city. Defendant objected on the ground that the testimony was admissible only in rebuttal. Afterwards, the court ruled that inability to procure coke was not within the exceptions mentioned in the contract as excuses for untimely delivery, and excluded all of defendant's testimony pertaining to its efforts and inability to procure coke, and thereupon defendant moved to strike out said rebuttal testimony of the witness. The court declined to do so at the time, but advised de-

fendant to renew the motion at the close of the case, and defendant saved no exception. The instructions told the jury that inability to procure coke was no defense for failure to deliver the iron, and that all evidence on that issue was withdrawn, and a separate instruction told them to disregard said testimony of the witness. *Held, first,* that there was no prejudicial error in permitting the witness to testify out of the usual order; and, *second,* that plaintiff, having produced this rebuttal testimony, was not estopped from. objecting to the evidence later offered by defendant to prove his inability to procure coke, the testimony being no part of plaintiff's case in chief, and admitted out of the usual order in the discretion of the court over the sole objection that ·it was testimony in rebuttal.

12. ———: Sales: Failure to Deliver: Purchases upon Market: Irrelevant Clause in Letter Demanding Delivery. The court having excluded testimony offered by plaintiff tending to show that, upon defendant's failure to deliver pig iron within the time specified in the contract, plaintiff was compelled to and did purchase pig iron upon the open market—excluded for the reason that no such measure of damages was pleaded—did not err in permitting plaintiff to read in evidence a letter to defendant containing the clause that "we have already been compelled to buy some iron on the market and will have to buy more, and on your account, if we cannot depend with certainty upon getting the pig iron from you," where the letter as a whole was in the nature of a demand upon defendant· for a delivery of the iron and said clause was a part of the demand. Besides, the clause was pertinent upon the pleaded issue that plaintiff had waived its right under the contract to demand delivery.

13. INSTRUCTION: No Evidence. It is not error to give an instruction telling the jury that the evidence pertaining to a certain issue pleaded as a defense is not sufficient to sustain said issue, and withdrawing all evidence pertaining to that issue from their consideration, where there is no evidence of probative force on the subject.

14. ———: Sales: Delivery by Installments: Failure to Deliver: Acceptance of Small Shipments: Waiver of Other Installments. Defendant having agreed to deliver ten thousand tons of pig iron in "equal monthly installments during March, April, May and June," but delivered none during those months, but did deliver one hundred and forty tons in October, which were accepted, it was not error to instruct that "under a contract calling for delivery in installments the acceptance of one installment or a portion thereof does not of itself waive the right to require other installments to be delivered in accordance with the contract, and that the acceptance of one hundred and forty tons in October was not of itself a waiver by plaintiff of its right to require that the remainder

of the iron be delivered in accordance with the contract in evidence," where defendant pleaded that plaintiff had extended the time of delivery, and waived the provision for delivery in the months named, and the delivery and acceptance of the iron delivered in October; and particularly was it not error to so instruct where the court further instructed that "if plaintiff consented or agreed to a postponement of the time of delivery until October, and defendant in October shipped certain iron and plaintiff accepted it as in compliance with the contract, the plaintiff cannot recover damages for failure to deliver the iron at the time specified in the contract."

15. ———: Burden of Proof: Defined in Others. An instruction telling the jury that the burden is upon plaintiff to establish by a preponderance of the evidence the facts necessary to a verdict in its favor under the instructions given, sufficiently sets forth what are the issues upon which plaintiff has the burden of proof, where another instruction given defines the issues upon which the jury may find for plaintiff, unless they further find the facts, which are also defined, constituting some one of the defenses pleaded.

16. ———: Measure of Damages: Sales: Installments: Failure to Deliver: Time of Breach. Where the defendant by its written contract agreed to deliver ten thousand tons of pig iron in "equal monthly installments during March, April, May and June" and plaintiff sues for damages for failure to deliver, and defendant pleads that the delay was waived and the time extended, at least to November when plaintiff told defendant it would accept no more shipments under the contract, the measure of damages is the difference between the contract price and the market price on the last day of March, April, May and June, respectively, if there was no extension or waiver—and not the difference in November.

17. PLEADING: Application to File Amended Answer and Counterclaim. Applications to file amended answers should be liberally allowed, but permission to do so rests largely in the discretion of the trial court, and unless the discretion is arbitrarily or unjustly exercised refusal of the application will not be reversible error. An answer having been filed to plaintiff's action for damages for failure to deliver goods sold within the time specified in the contract, and continuances having been allowed, it was not an abuse of the court's discretion to refuse thereafter to permit defendant to file an amended answer, where the amendment consisted solely of a counterclaim based on an independent cause of action which had fully accrued before the contract in suit was made and two years before the suit was brought, and a refusal to permit the amended

answer to be filed in no wise deprived defendant of his right to prosecute a suit based on the subject-matter of the counter-claim.

Citations to Headnotes: Headnote 1: Appeal and Error, 3 C. J. sec. 1588. Headnote 2: Evidence, 22 C. J. sec. 1459. Headnote 3: Sales, 35 Cyc. p. 628. Headnote 4: Sales, 35 Cyc. pp. 175, 650. Headnote 5: Sales, 35 Cyc. p. 185. Headnote 6: Appeal and Error, 4 C. J. sec. 2999. Headnote 7: Appeal and Error, 4 C. J. sec. 2878. Headnote 8: Contracts, 13 C. J. sec. 501. Headnote 9: Appeal and Error, 4 C. J. sec. 2988. Headnote 10: Sales, 35 Cyc. p. 247. Headnote 11: Appeal and Error, 4 C. J. sec. 2985; Evidence, 22 C. J. sec. 163. Headnote 12: Sales, 35 Cyc. p. 628. Headnote 13: Sales, 35 Cyc. p. 649. Headnote 14: Sales, 35 Cyc. p. 650. Headnote 15: Sales, 35 Cyc. p. 650. Headnote 16: Sales, 35 Cyc. pp. 637, 650. Headnote 17: Appeal and Error, 4 C. J. sec. 2757; Pleading, 31 Cyc. pp. 367, 368.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Jos. T. Davis* and *Nagel & Kirby* for appellant.

(1)   As a matter of law plaintiff is not entitled to recover; defendant's demurrer to the evidence should have been given and this cause should be reversed outright.   Cole v. Armour, 154 Mo. 333; Roaring Fork Potato Growers v. Clemons Prod. Co., 187 S. W. 619; Carman v. Harrah, 182 Mo. App. 365; Mulliken v. Hastine, 160 Mo. App. 14;   Peters & Reed P. Co. v. Folckemer, 131 Mo. App. 105; Frank Hart Realty Co. v. Ryan, 218 S. W. 415; St. L. Tr. Co. v. Am. R. E. & Inv. Co., 82 Mo. App. 260; Mohoney v. Reed, 40 Mo. App. 99; Lanitz v. King, 93 Mo. 519; Pressed Brick Co. v. Barr, 76 Mo. App. 380; Estel v. Ry. Co., 56 Mo. 282; Grams v. Novinger, 231 S. W. 267; St. L. Steam Heating & V. Co. v. Bissell, 41 Mo. App. 432; Bridge Co. v. Corrigan, 251 Mo. 667; 35 Cyc. 251; 23 R. C. L. 1444, sec. 268; 23 R. C. L. 1374; Ohio Falls Car Co. v. Menzies, 90 Ind. 83; Harris v. U. S. F. & G. Co., 213 S. W. 153; Stumpf v. Mueller, 17 Mo. App. 283; Chambers v. Board of Education, 60 Mo. 370; Hart v. Handlin, 43 Mo. 171; World Publ. Co. v. Hull, 81 Mo. App. 277; McGhee v. Bell, 170 Mo. 148; Tower v. Pauley, 51 Mo. App. 75; Johnson v. Whitman Agricultural Co., 20 Mo. App. 100; Roberts v. Benjamin, 124 U. S. 64, 31 L. Ed. 334; Morgan

460    SUPREME COURT OF MISSOURI,

Scullin Steel Co. v. Miss. Valley Iron Co.

v. McKee, 77 Pa. 228. (2) The cause should be reversed because of the erroneous theory that time was not of essence of the contract. Bridge Co. v. Corrigan, 251 Mo. 667, 685; Harris v. U. S. F. & G. Co., 213 S. W. 153; St. L. Steam Heating & V. Co. v. Bissell, 41 Mo. App. 432. (3) The court committed reversible error in excluding material and relevant testimony offered by defendant relative to the circumstances and conditions surrounding the parties at the time to aid in the construction of the contracts. Consolidated Coal Co. v. Brick Co., 66 Mo. App. 296; C. M. & St. P. Ry. Co. v. Hoyt, 194 U. S. 1, 37 L. Ed. 625; 23 R. C. L. 147; St. Joseph Hay & Feed Co. v. Brewster, 195 S. W. 72; Clough v. Stilwell Meat Co., 112 Mo. App. 191; Laclede Constr. Co. v. Moss Tie Co., 185 Mo. 62; North St. L. B. & L. Assn. v. Obert, 160 Mo. 515; Power Co. v. City of Independence, 188 Mo. App. 160; Redlands Orange Growers Assn. v. Gorman, 161 Mo. 203. (4) The court erred in excluding competent and material evidence as to weather conditions following delays caused by strikes. (5) The court erred in excluding the United States Government weather report as to weather conditions in the New England states tending to show general railroad congestion. (6) The court erred in refusing to allow defendant to introduce competent, material and relevant testimony as to delays under the excuse clause due to coke conditions. Coal Co. v. Brick Co., 66 Mo. App. 301; Power Co. v. Independence, 175 S. W. 88; C. M. & St. P. Ry. Co. v. Hoyt, 149 U. S. 1, 37 L. Ed. 625. Waiver by and estoppel of plaintiff from objecting to same. Railway v. Plate, 92 Mo. 614; Bruce v. Bombeck, 79 Mo. App. 231; Mason v. Mining Co., 82 Mo. App. 367; Baker v. McKinney, 87 Mo. App. 361. (7) The court erred in permitting plaintiff to introduce its witness Champion out of order in chief on rebuttal testimony. Glenn v. Stewart, 167 Mo. 584; State v. Marti, 230 Mo. 1, 77; Seafield v. Bohne, 169 Mo. 537; Burns v. Railway, 24 Mo. App. 10; Christal v. Craig, 80 Mo. 367. (8) The court erred in permitting the introduction of evidence to the effect that plaintiff went

into the open market to purchase iron when that was not an issue. (9) The court ered in admitting in evidence plaintiff's letter which contained immaterial prejudicial statements and refused to strike out that part of said letter. Walter v. Hoeffner, 51 Mo. App. 46; Grimm v. Inv. Co., 55 Mo. App. 457. (10) The court erred in giving its own instruction numbered 2 on measure of damages. Benjamin on Sales (4 Ed.) sec. 1314; Detroit Beef Co. v. Holstein Comm. Co., 223 S. W. 792; Grocery Co. v. Thompson, 216 S. W. 780; Rogers v. Union Iron Fdry. Co., 216 S. W. 780; Biddle v. Castner, 207 S. W. 129. (11) The court erred in denying to defendant the right to file its amended answer and counterclaim. Secs. 1232, 1233, R. S. 1919; Barber Asphalt Co. v. Ridge, 169 Mo. 367.

*Jourdan, Rassieur & Pierce* and *Rassieur & Goodwin* for respondent.

(1) There is no variance between the pleading and the proof, nor is there any evidence in plaintiff's case from which a waiver or modification of the contracts may be inferred as a matter of law, and the defendant's demurrers to the evidence were properly overruled. Peak v. International Harvester Co., 194 Mo. App. 128; Redlands Orange Growers'Assn. v. Gorman,161 Mo. 203; Wall v. Ice & Cold Storage Co., 112 Mo. App. 659; Murmann v. Wissler, 116 Mo. App. 397; Bernhardt v. Federal Terra Cotta Co., 101 S. E. 588. (2) The acceptance of the one hundred and forty tons of pig iron in October was not a waiver. Redlands Orange Growers' Assn. v. Gorman, 161 Mo. 203; Wall v. Ice & Cold Storage Co., 112 Mo. App. 659; Peak v. International Harvester Co., 194 Mo. App. 132. (3) The letter of August 10 was not a waiver. Bernhardt v. Federal Terra Cotta Co., 101 S. E. (Ga.) 588. (4) The acceptance of one installment or a part thereof, not delivered in accordance with contract, is not a waiver as to the balance. 24 R. C. L. sec. 566, p. 286; Phillips v. Taylor, 4 N. El. (N. Y.) 727; Enterprise Manufacturing Co. v. Oppenheim,

114 Md. 368, 38 L. R. A. (N. S.) 548; 23 R. C. L. p. 1366. (5)   The action being for total non-performance the question whether time of delivery was of the essence of the contracts is immaterial.    2 Williston on Contracts, sec. 846, p. 1621.   (6)   In executory contracts of sale, time is of the essence of the contract.   Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255, 30 L. Ed. 922; Norrington v. Wright, 115 U. S. 188; Redlands Orange Growers' Association v. Gorman, 161 Mo. 203; 2 Williston on Contracts, sec. 847, p. 1622; 23 R. C. L. p. 1331. (7)   Parol evidence is incompetent to vary or enlarge the terms of a written contract, and the court properly excluded oral evidence that in addition to the conditions named in the contracts, delivery was to be further conditioned on the completion of defendant's plant.   Bross v. Stancliff, 240 S. W. 1091; Massmann v. Holscher, 49 Mo. 87; Bank v. Bank, 244 Mo. 544, 576; Beheret v. Myers, 240 Mo. 58.   (8)   Parol evidence is inadmissible to show that a contract was delivered upon a condition subsequent.   23 R. C. L. p. 1392;   Lilienthal v. Suffolk Brewing Co., 28 N. E. (Mass.) 151.   (9)   These were contracts to deliver, not to manufacture, and defendant does not make out a defense unless it shows that delivery was prevented by reason of the conditions stated in the contract.   Therefore, if pig iron was obtainable on the market for delivery in St. Louis, defendant was bound to purchase and deliver same.   Haff v. Pilling, 134 Fed. 294; Cannistraci v. James Chieves & Co., 165 N. Y. Supp. 933.   (10)   Even if the contracts could be construed as contracts to manufacture, then under the rule of *ejusdem generis* the general clause "other causes beyond our control" following the words "strike and accidents" does not enlarge the excuses specifically enumerated, to-wit, strikes and accidents.   American Bridge Co. v. Glenmore Distilleries Co., 107 S. W. 283; Hickman v. Cabot, 183 Fed. 747; Rosenstein v. Farish Co., 178 N. Y. Supp. 865.   (11)   There is no substantial evidence in the case that the breach of contract was caused solely and directly by strikes or accidents, independent

of all other causes.   Lima Locomotive & Machine Co.
v. National Steel Castings Co., 155 Fed. 77; Cleveland
Rolling Mill Co. v. Rhodes, 121 U. S. 255, 30 L. Ed. 920;
Consolidated Coal Co. v. Jones & Adams Co., 83 N. E.
(Ill.) 852; Consolidated Coal Co. v. Block & Hartmann
Smelting Co., 36 Ill. App. 38; Pittsburgh Coal Co. v.
Northy, 123 N. W. (Mich.) 47; Arkell & Douglas v. Bor-
enstein & Sons, 176 N. Y. Supp. 581; 35 Cyc. 247; 23 R.
C. L. 1430.   (12)   Evidence that the Indiana Coke & Gas
Company may have broken its contract to supply blast
furnace coke to defendant and that said coke was not
obtainable on the market was properly excluded; first,
because under the rule of *ejusdem generis* it is not includ-
ed in the strike and accident clause; second, because in
making a sales contract a manufacturer assumes the risk
of being able to obtain proper fuel and raw materials.
Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255, 30 L.
Ed. 920; Haff v. Pilling, 134 Fed. 294; Cases cited under
points 10 and 11.   (13)   Evidence of weather conditions
obtaining in St. Louis and elsewhere was properly ex-
cluded: first, because under the rule of *ejusdem generis*
weather conditions are not included in the strike and ac-
cident clause; and, second, because bad weather is no
excuse for non-performance of a contract unless it is ex-
pressly so agreed.   Kitzinger v. Sanborn, 70 Ill. 146;
Cases cited under points 9, 10 and 11.   (14)   Hearing
testimony out of order, as an accommodation to a wit-
ness, is a matter within the discretion of the trial court.
(15)   Where evidence, inadvertently received, is with-
drawn from the jury by instruction, and the jury are
specifically instructed to disregard it, said instructions
cure any error that may have been committed in receiv-
ing the testimony, and its reception is not prejudicial.
(16)   The letter of August 10 was competent and rele-
vant evidence: first, as a demand; second, to rebut the
defense of waiver; third, as tending to show pig iron
was obtainable on the St. Louis market; fourth, as show-
ing that plaintiff had a meritorious complaint; fifth, as
relevant to the measure of damages.   Harrison Wire Co.

v. Hall & Willis Hardware Co., 97 Mo. 289; Haff v. Pilling, 134 Fed. 294. (17) The matter of allowing amendments and pleadings out of time is a matter resting in the discretion of the trial judge, and the denial of defendant's application for leave to file its counterclaim on the eve of trial was a proper exercise of that discretion. R. S. 1919, sec. 1274; Clark v. Transfer Railway Co., 127 Mo. 255. (18) The alleged counterclaim fails to state facts sufficient to constitute a cause of action, and leave to file same was properly denied for that reason.

LINDSAY, C.—The plaintiff obtained a verdict and judgment against defendant upon both of the two counts of its petition, each of which set out that defendant had sold and agreed to deliver to plaintiff certain quantities of machine cast pig iron, and had failed to deliver the same, to plaintiff's damage. The contract pleaded in each count was for the sale and delivery of 5,000 tons of iron of certain specifications, to be delivered in equal monthly installments, during the months of March, April, May and June, 1920, at the price of $35 per ton. The contracts so pleaded were made respectively on November 24, 1919, and November 26, 1919. The allegations were, in the first count, that defendant delivered 139 tons of said pig iron, and no more, and, under the second, that none was delivered, and that plaintiff was at all times ready to receive the same in accordance with the terms of the contract. The sum of $75,000 in damages was asked in each count. The answer, alike as to each count of the petition, after a general denial, admitted the making of the contracts, and pleaded, as to each, that it was subject to the condition therein that defendant should not be liable in damages for failure to deliver caused by "strikes, accidents or other causes beyond our control." and was also subject to the defendant being able to complete its blast furnace, and plant, in time to perform said contract. The defendant pleaded that it dismantled its plant in June, 1919, and con-

Vol. 308]　　　APRIL TERM, 1925.　　　465

Scullin Steel Co. v. Miss. Valley Iron Co.

templated completion thereof, March 1, 1920, and that simultaneously with the execution of the contracts it notified plaintiff that delivery of the iron was conditioned upon the completion of its plant. The defendant then pleaded that due to strikes, and other causes beyond its control, its plant was not completed until May 31, 1920, and pleaded that the particular events causing that delay were that manufacturers of machinery, and appliances necessary for completion, were unable to deliver on account of causes beyond their control; that carriers were unable to deliver on account of congestion of traffic and other causes beyond their control; that contractors engaged in the erection of said plant and furnace were delayed by strikes and bad weather; and that after the completion of said plant, about May 31, 1920, the defendant was further delayed in making deliveries under the contracts due to conditions, and causes beyond its control, in that, although defendant had contracted for coke of the necessary quality and quantity, to be used in the production of pig iron as specified in the contracts, the coke delivered to it (defendant) was wholly unfit and useless for the manufacture of pig iron of the quality specified, and that the coke market was such from May, 1920, to November, 1920, that defendant was unable to procure the coke necessary for said purpose, all of which conditions, it was alleged, were beyond the control of defendant. The defendant then pleaded that it had kept plaintiff constantly advised of said conditions, and that plaintiff, by reason of its knowledge thereof, from time to time extended the time for said deliveries, and waived the provision for deliveries in the months specified in the contract. The defendant pleaded that having secured some coke, in October, 1920, it manufactured and delivered to plaintiff 97 tons of the required specifications, which plaintiff accepted, and then pleaded that in November, 1920, having secured the necessary coke, it notified plaintiff it was ready and willing to deliver said pig iron, and has been and is willing to do so, but plaintiff refused to accept the same.

308 Mo. Sup.—30.

The reply was a general denial. The plaintiff had a verdict for $13,026.24 under the first count, and a verdict for $14,037.50 under the second count. These sums included interest computed at six per cent, from May 21, 1921, the date of filing the petition, to the date of the return of the verdict.

First may be noticed the contention of the plaintiff that the brief for defendant does not comply with Rule 15, in that, it contains no assignment of errors. It does not contain such in a separate and formal way, but the errors claimed are nevertheless asserted under various subdivisions of points and authorities in the brief and argument filed, and the compliance with the rule is sufficient under what has been held in Eastman v. United Rys. Co., 232 S. W. 725, and other cases.

Defendant insists that its demurrer to the evidence should have been sustained; that plaintiff, as a matter of law, was not entitled to recover. This raises numerous mixed questions. There were some conversations over the telephone between the parties, through the purchasing agent of plaintiff, and the treasurer and representative of the defendant, before the contract was executed. In a circular letter dated November 12, 1919, the treasurer of defendant addressed plaintiff's purchasing agent calling plaintiff's attention to defendant's arrangement for casting machine pig iron, and the advantages of the proposed method for casting. In this letter it was stated: "With our new furnace in operation, which we believe will be about March 1st, we shall be in position to furnish Goltra Special Pig Iron in basic, Malleable, Bessemer, and Foundry". The letter then set forth the contents of the iron so proposed to be cast, and solicited orders from the plaintiff. This letter, offered by defendant, was admitted on the theory that it tended to show that the parties had in contemplation a special grade of pig iron.

The first of the two contracts sued on, made November 24, 1919, was prepared by defendant's treasurer upon a printed form, in duplicate, and signed and trans-

mitted to plaintiff. As transmitted, it specified the period for shipment as March 1st, to June 30, 1920. Plaintiff's purchasing agent inserted the provision therein providing for delivery in equal monthly installments within that period, as being the agreement reached in the negotiations. The contract as thus completed is as follows, the italics showing the terms written into the printed form, and the provision as to monthly installments is shown:

> "Messrs. Scullin Steel Company, St. Louis, Missouri
>        We have sold you and you agree to buy:
> "Quantity              5000 tons Machine Cast Pig Iron.
> "Specifications
>
>                Silicon 1.25 and under
>                Sulphur  .05 and under
>                Phosphorus  .25 and under
>                Manganese  .80 to 100
> "Price          Per ton 2240 Lbs.  $35.00 f. o. b. cars their switch.
>                THIRTY-FIVE DOLLARS.
> "Payment        Cash 30 days.
>                "If buyer fails to make any payment when due,
>                the seller shall have the right to cancel the con-
>                tract or to postpone shipment of future install-
>                ments until prior shipments are paid for.
> "Shipment              March 1st to June 30th, 1920.
> "EQUAL MONTHLY INSTALLMENTS DURING MARCH, APRIL,
>                MAY AND JUNE.
> "Route Via.
>                "If shipment is to be made in installments this
>                contract for all purposes shall be treated as sep-
>                arate for each installment.
>                "We shall not be liable in damages for failure
>                to deliver caused by strikes, accidents or other
>                causes beyond our control.
>                "The Contract is completely set forth herein.
>                    "MISSISSIPPI VALLEY IRON COMPANY,
>                           "Per E. O. J. WALLACE, Tr.
> "Scullin Steel Company,
> "Accepted J. W. Hargate,
>       "(Buyer will please sign and return this copy)"

The contract as so conditioned and accepted by plaintiff was transmitted by letter to defendant and attention was called to the provision as to monthly installments. The contract declared upon in the second count of the petition, dated November 26, 1919, is the same in form and terms. The defendant's claim that the de-

murrer should have been sustained is grounded upon the contentions; (1) that plaintiff sued on a special contract, and (2) did not prove the contract sued on; (3) that the evidence shows a waiving of all the terms and conditions except the price, and that the acts, conduct, circumstances and statements show a modified and entirely new contract; (4) that plaintiff's theory was that time was of the essence of the contract, and there was either a waiver of this, or, a showing in the evidence that time was not of the essence of the contract, and (5) that plaintiff took an undue advantage, and undue time in which to speculate on the market price of iron, before undertaking to rescind, not giving defendant a reasonable time in which to perform. The consideration of the general issue raised by the demurrer involves a consideration of certain other issues, either directly or incidentally—the competency of certain evidence, offered, or admitted; the construction to be given to the written contract; and the claim of waiver, under the acts and declarations of the parties.

In support of its position, the defendants sought to show upon cross-examination of plaintiff's purchasing agent, Hargate, and also upon its examination of Wallace, treasurer of defendant, that in and under the negotiations between them, and by the acts of the parties, it was agreed that the time of delivery of the iron as set forth in the contract was conditioned upon defendant having its plant completed on March 1, 1920. There is much space taken up in the record with the questions tending toward the purpose stated, with objections thereto by plaintiff, and with the rulings of the court thereon. There was discussion as to whether the questions and their purpose were an attempt to show, by parol, a condition, or agreement, as to the time when the contract itself should become effective, or whether the purpose was to show that the agreement, outside the written terms, was that the time of delivery set forth in the contract was conditional upon completion of the plant, and might be postponed.

Parol Proof.

Upon the questions, and upon the statements of defendant's counsel as to his purpose, too long to set out here in detail, the court held that the evidence which defendant's counsel sought to bring forth was parol evidence tending to vary the terms of the written contract, and excluded that evidence. That the defendant was seeking by parol evidence to add a new condition to the contract, as to the time of delivery of the iron, and not to show a conditional delivery of the instrument, or a condition as to when it should become a contract, appears reasonably certain from the questions and from the statements of counsel for defendant. We agree with the trial court in the conclusion reached on that point. The written instrument is unconditional, and unambiguous in this particular. The negotiations which preceded its execution were merged into it, and consummated by it into an agreement in writing, and the court did not err in excluding the evidence offered, of these conversations, had before the execution and delivery of the contracts, the purpose of which was to show that in addition to the conditions mentioned in the contracts, delivery was further conditioned upon the completion of the plaintiff's plant. [Massman v. Holscher, 49 Mo. 87; Bank v. Bank, 244 Mo. 554; Beheret v. Myers, 240 Mo. 58; Bross v. Stancliff, 240 S. W. 1091.]

The plaintiff declared upon the contracts as made respectively November 24, and November 26, 1919. The

Waiver of Conditions.

essential defenses offered by the defendant were, that the delay arose under conditions provided for in the contracts, and also that there was an extension or a waiver of the conditions as to time. The first of these issues arose under the terms of the contracts; the second, upon other grounds. Unless the defendant sustained the burden of showing a change or a waiver of the conditions, the contention of defendant that plaintiff declared upon one cause of action and was permitted to recover upon another and different cause, cannot be allowed. The cases cited by defendant, Lanitz v. King, 93 Mo. 513; Cole v. Armour,

154 Mo. 333, and others, are applicable only where the cause of action proved is different from the one declared upon.

The plant of defendant was not completed until May 31, 1920, and during that period no iron was delivered to the plaintiff. The evidence shows that in May, 1920, the agent of plaintiff by telephone was advising the defendant that plaintiff's stock of pig iron was low, and that it wanted the iron from defendant. Like conversations took place in June and July, in which the plaintiff called attention to the fact that its stock of pig iron was low. During this period the explanation of defendant's agent was that coke could not be had, of a kind necessary for casting pig iron of the specifications provided for. On August 10, 1920, the plaintiff wrote to defendant a letter as follows:

"Under the terms of the contract of November 24th and 26th, you were to ship the 10,000 tons machine cast pig iron in equal monthly installments during March, April, May and June. You have not shipped any, and therefore are in default as to all of it.

"Recently you promised to ship some to us during August and we are willing to accept such belated delivery as in full compliance with the contracts, provided you do ship. We have already been compelled to buy some iron on the market and we do not want to become overstocked with outside purchases, but we will have to buy more and for your account, if we cannot depend with certainty upon getting the pig iron from you.

"Please let us know *exactly* when we may expect delivery, so that we may govern ourselves accordingly."

The answer of defendant to the foregoing was a letter under date of August 11, 1920, as follows:

"Your letter of the 10th has been carefully read. Shipments have not been made on account of our contracts with you because of circumstances entirely beyond our control. We intended blowing in the 1st of March, but were prevented from doing so on account of our not being able to obtain the necessary materials to complete

the reconstruction of our plant.  We were, also, delayed by labor troubles.  When we finally did blow in we experienced considerable trouble with the coke, in fact were unable to make any basic iron of your specifications.

"At the present time our furnace is banked awaiting a supply of coke which we expect will produce the various grades of iron for which we have contracts.  When our supply of coke which is enroute reaches us, we can determine within a very few days just how soon we will be able to begin supplying you with basic."

To this letter plaintiff made no reply, nor, according to both Hargate and Wallace, did defendant follow up its letter of August 11th by further statement of its expectations or purposes, until in October, 1920.  About the 18th of October, 1920, the defendant notified plaintiff by telephone that it had four cars of pig iron.  There is some slight variance between plaintiff's agent and defendant's agent in their testimony as to this transaction, but the evidence tends to show that, of the four cars, two of them were of iron according to the specifications, and two were not, or, as the witnesses termed it, the iron of these two was "off basic."  The plaintiff received these four cars on October 22, 1920, and the iron was accepted at $35 per ton, the price specified in the contract.  Plaintiff's witness, Hargate, testified that the contract was not mentioned, but that the iron was acceped.  Hargate testified that shortly after this, defendant offered to ship more iron "off basic," which plaintiff did not want and would not accept.  Wallace, defendant's treasurer, testified that Hargate, in their talk, in October, wanted iron according to specifications, but did not want iron shipped that was not in accordance with specifications, and that he, Wallace, answered that as soon as they could make it they would ship it.  Wallace testified that about one week later, Hargate called him and told him to ship no more iron, that plaintiff would take no more shipments on that contract.  About the 5th of November, 1920, Mr. Goltra, president of the defend-

ant company, interviewed the president of plaintiff company, saying to him that defendant would like to resume shipment of iron and was prepared to fill the contract. Plaintiff's president declined to take the iron, saying they would not need it. Later, on November 15th, the plaintiff wrote to defendant a letter, saying that under the contracts deliveries should have been made in March, April, May and June; and that plaintiff could not now accept deliveries under those contracts, advising defendant that plaintiff would look to it for settlement for the difference between the contract price and the market price at the dates when delivery was required under the contracts, and suggesting that defendant take up the matter with plaintiff's attorney. To this, defendant's president replied, saying that on the following week he would take up the subject with plaintiff's attorney.

The plaintiff and defendant were both manufacturers. The product made by defendant, the subject of this sale, was a material used by the plaintiff in the manufacture of other products. The plaintiff would have engagements, fulfillment of which depended upon its obtaining the commodity which defendant undertook to furnish. The contract was explicit in its statement of the time, and periods of time within which definite amounts should be delivered. Under the terms of the contracts, and the circumstances and purposes under which and for which they were executed, the time of delivery, as stipulated, was of the essence of the contract. [Redlands Orange Growers Assn. v. Gorman, 161 Mo. 203; Norrington v. Wright, 115 U. S. 188; Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255; 23 R. C. L. page 1331; Sunshine Cloak Co. v. Roquette, 30 N. D. 143, L. R. A. 1916 E, 932.] The provision as to equal monthly installments in the named months, written into the contract, with the printed provision as tendered by defendant that, ''If shipment is to be made in installments this contract for all purposes shall be treated as separate for each installment,'' with the other circumstances shown, is indicative of an intention to make the time of

delivery of each installment a condition precedent as to each installment. The decision in Bridge Co. v. Corrigan, 251 Mo. 667; St. L. Steam Heating & V. Co. v. Bissell, 41 Mo. App. 426, and Harris v. U. S. F. & G. Co., 213 S. W. 151, are not regarded as holding contrary to the view above expressed. These cases dealt with contracts for the construction of buildings or structures of a permanent nature, and there were provisions in the contracts, and circumstances surrounding, held to be inconsistent with the idea that time was of the essence of the contract.

Evidence was introduced as to the market price in St. Louis of iron of the specifications contracted for during the months named in the contract, including November, 1919. The evidence showed that during the months named in the contract the market price was much above the price contracted, $35 per ton, and continued so and reached its peak in September or early in October, when a decline began; that this decline was not rapid until about November, when, as the evidence shows there was a sharp break, and pronounced downward trend in the price of this product.

Under the evidence, and under the approved ruling of the trial court, the contract was completely expressed in the written instrument which has been set out heretofore. Therein, the condition applicable to delay in delivery was the one absolving defendant from liability "for failure to deliver caused by strikes, accidents or other causes beyond our control." In the state of the pleadings, the burden rested upon the defendant of showing that the delay was due to the causes specified in the contract; or, that there was an agreement subsequent, extending the time; or, that there was a waiver by the plaintiff of its rights under the contract. The immediate question is whether it must be held as a matter of law, under the evidence, that the defendant is within one or more of these conditions. The evidence in the record is not such that it must be said that there was an express agreement extending the time of delivery, or that, as a matter of law, there was a waiver of the condition in that

respect. No express agreement was made in the conversations between Hargate and Wallace. These, on the one side, were representations that plaintiff's stock of iron was low, and, on the other, explanations as to why defendant had not delivered. Under defendant's evidence, defendant did not have coke for making the iron specified until in November.

The letter of plaintiff of August 11th was not a waiver and did not result in a new agreement, because the defendant did not respond to the conditions suggested or proposed in plaintiff's said letter. In that letter the plaintiff charged the defendant with being wholly in default, referred to a recent promise of defendant that it would ship some in August, and upon that expressed a willingness to accept "such belated delivery as in full compliance with the contracts *provided you do ship*," and then asked to be advised "*exactly*" when delivery might be expected. Defendant's reply did not meet the requirements as to so advising plaintiff, nor did the defendant make any shipment except and until the one made in October. This did not constitute an acceptance of or compliance with plaintiff's offer of August 10th. [Bernhardt v. Federal Terra Cotta Company, 101 S. E. (Ga.) 588.]

The question whether the acceptance by plaintiff of the iron shipped in October operated as an extension of time, or a waiver, was involved in the issue presented by the demurrer to the evidence. The trial court took the view, and so instructed the jury, that acceptance of an installment, or a part of it out of time, under a contract calling for delivery in installments, does not of itself waive the right to require delivery of other installments, and that the acceptance in October of a part of the iron, did not of itself, and irrespective of any agreement by plaintiff to an extension of time, constitute a waiver. This conclusion is supported by the holding in Redlands Orange Growers Assn. v. Gorman, 161 Mo. 203, where the cases were reviewed; and the like rulings are found in Wall v. Ice & Cold Storage Co., 112 Mo. App. 659, and

Peak v. International Harvester Co., 194 Mo. App. 128. See also 23 R. C. L. p. 1366; 24 R. C. L. p. 286. A part of the iron delivered, as has been said was in accordance with the specifications, and a part was not. The trial court in its instruction on the measure of damages applied this delivery and acceptance to the first installment, due in March, under the first count in the petition.

The defendant complains that the court excluded evidence offered to show the condition of its plant, and
Condition of Plant. plaintiff's knowledge thereof, at and prior to the time of the making of the contract. The court at first excluded evidence of this character, but afterward admitted in evidence the circular letter of November 12, 1919, wherein it was stated that defendant expected its plant to be in operation by March 1, 1920, and also permitted plaintiff's purchasing agent to testify on cross-examination that, at the time the contract was made, he knew that defendant's furnace "was down," and that it was being remodeled. Whatever error might be imputed to the court in that regard, in the beginning, was not perpetuated, because the evidence admitted clearly showed the fact that defendant's plant was not in operation when the contract was made, and plaintiff's knowledge at that time, of that fact, was made equally clear. The contract in writing, directly purporting to express all the terms agreed upon, was executed by the parties under that known situation. Upon the whole, the action of the trial court in this regard was not reversible error.

The language used in the contract is that defendant was to "sell and deliver" the iron to plaintiff. The
To Sell and Deliver Means To Manufacture and Deliver. contention of plaintiff is, and was, that since there was machine cast pig iron of the named specifications to be had in the market, the defendant could have purchased the commodity and performed the contract. The trial court construed the contract to be one to manufacture and deliver, and so instructed the jury. The defendant was a manufacturer, and not a

merchant or broker. It is very evident from the circumstances that the parties had in contemplation the manufacture by the defendant of the iron to be delivered under the contract. They so treated it during the whole period. The defendant made no effort or offer during the period to fill the contract by the purchase of iron, of like specifications. The plaintiff introduced evidence tending to show that pig iron of the specifications named in the contract was purchasable in St. Louis during the spring of 1920. Since the defendant did not, during the time specified, make any offer to deliver iron obtained through purchase, it lost nothing through the holding that its contract was one to manufacture and deliver. The plaintiff is not appealing, but is contending here that the contract could have been met through the purchase by defendant of iron of specifications meeting the requirements. The case was submitted, and under the demurrer is to be considered here, upon the issues, whether there was an extension of time, or whether the failure to manufacture and deliver was due to accidents, strikes or other causes beyond the control of defendant, as specified in the contract.

There is no substantial evidence in the record tending to show that defendant was prevented by accident from complying with the contract. The defendant introduced evidence showing a number of strikes of the men employed by various contractors engaged upon the work of reconstruction of its plant, and evidence of a general strike of switchmen on railroads, and of a strike of teamsters in St. Louis. There is variance in the testimony as to the length of time strikes delayed the completion of the plant, but a delay of from one to two months might be attributed to this cause, as accruing after the making of the contract.

**Accident: Strikes.**

Defendant offered evidence to show that there was extremely cold weather during a part of the time in which the work of remodeling its plant was in progress, and that the Building Commissioner of the City of St. Louis held up construction

**Cold Weather.**

for a time, and offered in evidence a report of the
Weather Bureau of the United States, showing extreme
cold weather in the New England states, from which
section defendant was receiving certain sand and gravel
material necessary in the construction of its plant. The
defendant assigns error upon the refusal of the court to
admit that evidence. The court did not err in excluding
that evidence. These weather conditions were not within
the terms of the clause in the contract under the ap-
plicable rule of construction, because these conditions
were not within the classes specifically enumerated, and
do not naturally fall within those classes. This clause
is subjected to the rule that where an enumeration of
specific things is followed by some more general word or
phrase, such general word or phrase is to be held to re-
fer to things of the same kind. [13 C. J. p. 537; Miller
v. Wagenhauser, 18 Mo. App. 11; American Bridge Co.
v. Glenmore Distilleries Co., 107 S. W. 279; Rosenstein
v. Farish Co., 178 N. Y. Supp. 865.] But, there is an-
other consideration under the evidence in the record.
The defendant's plant was completed on May 31, 1920.
Regardless of the effect of weather and other causes for
delay, it stands conceded by defendant that at no
Coke. time prior to October, 1920, did it have coke of
the necessary quality and quantity to make iron of the
required specifications, and apparently not until in No-
vember a sufficient quantity of coke to undertake making
the quantity of iron required. The failure to make and
deliver the iron during the period after May 31, 1920,
according to defendant's own statements and evidence,
was not attributable to accidents, strikes, or causes other
than lack of coke. There was the express offer of plain-
tiff in August, 1920, to accept iron as under the contract,
provided the defendant would devise exactly as to when
it would ship, and would actually deliver accordingly.
At that time there was no cause to prevent manufacture
and delivery other than lack of coke. That cause ac-
cording to defendant's evidence had existed throughout
all the period covered by the contract. Essentially then,

under the facts, the question arises whether the failure or alleged inability of the defendant to procure the necessary coke, was a cause of its failure to deliver within the clause of the contract exempting defendant from liability for failure due to accidents, strikes or other kindred causes. Defendant offered to introduce evidence to show that in November, 1919, it entered into negotiations with the Indiana Coke & Gas Company for a supply of coke of the kind proper to its purposes, and entered into a contract in February, 1920, for such supply, but that the coke delivered under said contract was not in conformity with the contract and was unsuited to defendant's purposes, and that defendant was unable to get the necessary coke elsewhere until in October and November, 1920. The defendant complains of the exclusion of this evidence by the trial court. This was not error. The defendant assumed the risk of procuring the necessary coke as a material to be used in the manufacture of the iron. Its failure to do this was not a cause, which, under the terms of the contract, exempted defendant from liability. Under this point our attention is called to the decision in Coal Co. v. Brick Co., 66 Mo. App. 296. In that case the contract was for the shipment of coal, and the language of the contract was that the plaintiff should not be required to furnish coal "when prevented by strikes, or *any other cause beyond its control, from handling the products of its mines.*" The plaintiff's mines were situated on the line of the Wabash Railroad, and it was held that if the railroad company during the month involved failed and refused to furnish the number of cars which the plaintiff had reason to expect at the time the contract was entered into, and such failure to furnish cars was the sole cause of the plaintiff's failure to comply with his contract to ship two cars of coal each day, the plaintiff was entitled to be excused. In that case it would seem certain that the parties contracted in view of the fact that the plaintiff, from day to day, was dependent upon a given railroad company to furnish the necessary cars to handle

the coal. In the case at bar, the defendant must be held to have assumed the risk of procuring in advance by contractual arrangement, from any source available, a material necessary to its purpose. If the party with whom defendant contracted failed to comply with his contract, that was not a result due to accident or to strikes or to causes which can be held to be within the terms of the contract under consideration. In Cleveland Rolling Mills v. Rhodes, 121 U. S. 1. c. 263, it was said: ''The failure to have on hand a sufficient amount of charcoal to keep the furnace at work is not shown to have been due to 'accident or strikes,' which were contingencies contemplated by all parties, and provided for in the contract sued on. But it was a state of things of which the plaintiffs assumed the risk by undertaking that the whole of the ore should be made into pig iron ready to be shipped as soon as possible after the opening of navigation in 1881.''

Upon a consideration of the record we are of the opinion that the court did not err in overruling defendant's demurrer.

The defendant assigns as error the action of the court in permitting a witness for plaintiff to give testimony, out of order, and as a rebuttal of testimony to be offered by the defendant.

**Testimony in Rebuttal.**

As a part of its defense the defendant pleaded that coke of the proper quality was not obtainable in St. Louis from May, 1920, to about November, 1920. The plaintiff introduced the witness Burt Champion, who testified as to the prices of iron during the period mentioned, and then asked to be permitted to show by the same witness that coke was obtainable in St. Louis during that period, for the reason that the witness was about to leave the city. The defendant objected upon the ground that the evidence was in the nature of rebuttal, and not admissible at that time. The court after inquiry of the witness as to his purpose to leave the city, in the exercise of its discretion, permitted the witness to testify. Afterward, when defendant, in

putting in its evidence offered to show its efforts and its inability to procure coke, and the court held that its failure to procure coke was not within the excepting clause of the contract, and defendant then moved the court to strike out the testimony of plaintiff's said witness on that subject. The court declined to do so, at that time, but advised defendant to renew its motion at the close of the case. We find no exception noted to the ruling then made on the motion. In submitting the case the court instructed the jury, in an instruction for plaintiff, that defendant's failure to make delivery of the iron by reason of not having coke of the proper quality and quantity was no defense, and that all evidence admitted on that issue was withdrawn from their consideration. The court also in a separate instruction given for defendant told the jury to disregard the testimony of said witness, Burt Champion, as to being able to purchase blast furnace coke during the year 1920. Under the first of these instructions the failure of defendant to have the necessary coke was expressly eliminated as a defense, under the contract. That being so, and the jury having also been explicity told to disregard the testimony of the witness it cannot be readily seen how defendant's case was prejudiced by the fact that the testimony was given out of the ordinary course, or, because it was not expressly withdrawn at the first request of defendant. It is urged that the plaintiff, having taken that testimony, was estopped from objecting to the testimony subsequently offered by the defendant on that subject. If the testimony introduced by plaintiff had been a part of his case in chief this would be true, as was held under that situation in South St. Louis Ry. Co. v. Plate, 92 Mo. 614. But, in this case the testimony was not primarily a part of plaintiff's case. It was admitted, in the exercise of the court's discretion, and against objection only as to it being testimony in rebuttal, and out of regular order. Under the circumstances shown we do not regard the action of the court as reversible error.

The defendant complains of the offer and effort of plaintiff to show that on account of the failure of defendant to deliver the iron, the plaintiff was compelled to and did purchase pig iron upon the market. But the court excluded that evidence, and committed no error therein. The defendant also assigns as error the action of the court in permitting the whole of plaintiff's letter of August 10th to be read, and specifically the following portion: "We have already been compelled to buy some iron on the market and we do not want to become overstocked with outside purchases, but we will have to buy more, and for your account, if we cannot depend with certainty upon getting the pig iron from you." The defendant urges that the question of plaintiff being compelled to buy iron upon the market, or of any damage, or measure of damages made thereby, was not made an issue under the pleadings. That is true, but this statement was embodied in a letter which was in the nature of a demand by plaintiff upon defendant for a delivery of the iron, and the statement specified was a part of the demand, and of what the plaintiff expected to do under the circumstances. The statement was pertinent also upon the question whether the plaintiff was waiving any right under the contract. On these grounds it was not reversible error to admit the whole of the letter.

The defendant assign as error the giving of plaintiff's instruction numbered 6. This instruction told the jury that there was no substantial evidence that defendant was prevented from making delivery by reason of any delay or congestion on the part of any railroad or common carrier in the delivery of materials, and all that testimony admitted in evidence on that issue was withdrawn from their consideration. The defendant urges that there was sufficient testimony before the jury upon that issue to warrant the jury's action thereon in making up their minds. Attention is not called to the specific evidence on this point. The defendant offered and the court admitted

*Purchases from Others.*

*Withdrawing Evidence.*

testimony as to certain materials contracted for by defendant, and circumstances as to their delivery. Chiefly, these consisted of a water softener and a car of sand. For these defendant contracted in September, 1919, and it appears, with the representative of a firm in Philadelphia. The testimony was that their delivery was delayed. The evidence was that the water softener was delivered in January, 1920, that it was to be set up by the defendant, and that setting it up would require about three weeks of time. This delay, the witness said, was due so far as he knew to trouble at the factory. All of the sand and gravel, which it was said was of a special kind, was not delivered until in May. Upon the question of the cause of the delay of this material the witness could not qualify, that is, he did not know whether the delay was caused by the railroad or not. The sand was· for use in connection with the water softener. The testimony of the witness was that other sand might have been obtained and used, but not under the guaranty of his firm which specified the particular sand to be used. There was also testimony of delay in getting certain motors and other electrical appliances. This delay was explained as due to delay in getting the appliances delivered to the railroad, but the reason of that was not explained. The testimony fell short of showing a delay due to railroad .congestion, if that were within the strike and accident clause of the contract, as a contract to manufacture and deliver the iron. The witnesses could not testify from their own knowledge as to the cause of the delay.

The defendant assigns as error the giving of Instruction 7 which withdrew from the jury all evidence as to the question of timely delivery of coke. That question has been considered already.

The defendant complains of the giving of Instruction 9 for plaintiff. This instruction told the jury that under a contract calling for delivery in installments the acceptance of one installment or a portion thereof did not of itself waive the

Waiver:
Acceptance
as Part.

right to require other installments to be delivered in accordance with the contract, and that the acceptance of 140 tons of iron in October, 1920, was not of itself a waiver by plaintiff of its right to require that the remainder be delivered in accordance with the contracts in evidence. The defendant pleaded that plaintiff had extended the time for delivery and had waived the provision for deliveries in the months named, and pleaded the delivery and acceptance in October of the iron then delivered. The defendant did not ask an instruction advising the jury as to what constituted a waiver, but the court instructed the jury under defendant's Instruction 3 that the parties to such a contract might extend the time of its performance either expressly or by their conduct, and that if the jury found from the evidence that plaintiff consented or agreed to a postponement of the time of the delivery until the month of October, and that on October 19, 1920, the defendant did ship certain iron and plaintiff accepted it as in compliance with the contracts, then the plaintiff could not recover damages for failure to deliver the iron at the times specified in the contracts. We do not think these instructions could have misled the jury upon that subject.

Defendant assigns as error the giving of plaintiff's Instruction 11, as modified by the court, upon the burden of proof. That instruction told the jury that the burden was upon plaintiff to establish by a preponderance of the evidence the facts necessary to a verdict in its favor under the instructions given, and then told the jury that upon the issue as to whether defendant was excused from making delivery due to strikes, accidents or other causes beyond its control (as defined in the instructions), and upon the issue as to whether or not the plaintiff had waived any of its rights under the contracts, the burden of proof was upon the defendant. Defendant complains that the court did not in this instruction more specifically set forth what the issues were upon which the plaintiff had the burden of proof. The instruction properly placed upon the de-

*Burden of Proof.*

484 SUPREME COURT OF MISSOURI,

Scullin Steel Co. v. Miss. Valley Iron Co.

fendant the burden of proof upon the two issues specifically pointed out, and necessarily left the burden on the plaintiff as to others, and besides, by Instruction 1, given of the court's own motion, the court defined the issues upon which they might find for plaintiff, unless they further found the facts, which the court also defined, constituting a defense.

The defendant also assigns error in the giving of Instruction 2, by the court of its own motion, on the measure of damages, whereby the court confined the jury to finding plaintiff's damages to sums equal to the difference between the contract price and the market price as of the last days of March, April, May and June, 1920. The defendant assigns as error therein, that the court did not give the jury an opportunity to assess the damages as of the time of November, the time when, as defendant urges, the breach, if any, really occurred. Under this attention is called to Detroit Beef Co. v. Holstein Com. Co., 223 S. W. 790, and Grocery Co. v. Thompson, 216 S. W. 780. These were cases in which, under the contracts, no definite time was fixed for delivery. Under Instructions 1 and 2 the right of plaintiff to recover was submitted upon plaintiff's theory, subject to defendant's defense thereto. Under that, if the jury found that there had been no extension of the time for delivery, the damages were assessable as of the time of the breach of the contract. The defendant asked no instruction upon the measure of damages assessable as of November, 1920. In this connection the plaintiff insists that under the evidence as to the average market price of iron in St. Louis, in November, 1920, the damages, if assessed according to that price and as of that time, would have been in excess of the amount allowed by the verdict, and that the amount of the verdict is far below the difference between the market price, and the contract price, in the period of the months named. However, laying aside that suggestion we think the measure of damages was properly defined and submitted.

Measure of Damages.

There is yet another assignment of error founded upon the refusal of the court to permit the defendant to file an amended answer, which included a counterclaim against the plaintiff. The suit was filed May 21, 1921, and assigned to Division No. 1 under the rules. An answer was filed by defendant on August 26, 1921. The answer then filed was the one on which the case was tried. The plaintiff filed its motion to strike out parts of the answer; which motion was overruled, and afterward, January 3, 1922, plaintiff's reply was filed. On January 16, 1922, the defendant filed its affidavit for a continuance, and the application was granted and the cause re-set for February 20, 1922. On February 15, 1922, the defendant made oral application, in Division No. 1 of the court, for leave to file its amended answer and counterclaim, which was denied. The counterclaim set up the creation of the War Industries Board in the World War period, and its powers, and alleged that the plaintiff herein requested said War Industries Board to allocate and purchase for it certain quantities of iron; that said War Industries Board, about October 22, 1918, allocated to, and in writing ordered from the defendant herein 6,000 tons of pig iron at $39.60 per ton, to be manufactured for and delivered to the plaintiff, by the defendant, in equal monthly installments during the first half of the year, 1920; that said allocation and order was accepted by the defendant; that defendant was ready and willing to deliver said iron in accordance with said provisions, but that plaintiff failed and refused to accept and receive the same, or any part thereof, whereby the defendant was damaged in the sum of $129,000 and defendant prayed judgment for that sum against the plaintiff. Division No. 1 considered the application to file the amended answer and counterclaim on February 15, 1922, and denied the application. On February 20th, the cause was laid over to February 23, 1922, and on February 23, 1922, the plaintiff renewed its application in Division No. 1, and its application was again overruled, and on that ground defendant asked that the cause

be continued. The application for the continuance was denied, and the cause assigned for trial in Division No. 13. The defendant renewed its application to file the counterclaim. Division No. 13 refused to review the action of Division No. 1, or to permit the filing of the counterclaim, and the cause was on that day taken up for trial. The court, Division No. 13, refused the application essentially upon the ground that the action of Division No. 1 would not be reviewed, but referred also to the length of time the cause had been pending relative to the time at which the offer was made to file the counterclaim. The amendment asked to be filed by the defendant consisted solely of the counterclaim which set up an independent cause of action against the plaintiff, and which, according to the allegations, had fully accrued some months before the contracts here sued on were made, and about two years before the plaintiff's suit was filed. The counterclaim was the subject-matter of a suit which the defendant was at any time authorized to prosecute against the plaintiff, and the defendant was not deprived of this right by the refusal to permit the filing of an amended answer in which the amendment consisted solely of the counterclaim set up. The rule is that trial courts should be liberal in allowing amendments. [Ensworth v. Barton, 67 Mo. 622; Lottman v. Barnett, 62 Mo. 159.] Yet, such matters rest largely in the discretion of the trial court. [Clark v. St. Louis Transfer Ry. Co., 127 Mo. 255; State ex rel. v. Sandusky, 46 Mo. 377; Dozier v. Jerman, 30 Mo. 216.] And by the same, and other authorities, it is held that this court will not interfere, unless it is apparent that the discretion has been arbitrary and unjustly exercised. The circumstances here shown are not such as we can say that there was an arbitrary and unjust exercise of discretion in denying the right to file the counterclaim.

The record shows that the trial of this case consumed five days; that in the course of the trial the various questions raised by counsel for the respective parties were thoroughly and ably discussed, and that the learned

State ex rel. Railway Co. v. Allen.

trial court gave a most considerate attention to all the evidence and to all the questions involved. We have reached the conclusion that the court committed no reversible error, and that the judgment should be affirmed.

PER CURIAM.—The foregoing opinion of LINDSAY, C., in Division, is adopted as the opinion of Court in Banc. All of the judges concur, except *Graves, C. J.,* and *Walker, J.,* who dissent.